Bartlett v. Cheesbrough.

---

D. S. BARTLETT AND H. THURSTON, PLAINTIFFS IN ERROR, V. MOSES CHEESBROUGH, DEFENDANT IN ERROR.

| | |
|---|---|
| 23 | 767 |
| 26 | 147 |
| 23 | 767 |
| 43 | 545 |
| 23 | 767 |
| 44 | 782 |
| 23 | 767 |
| 54 | 778 |
| 23 | 767 |
| 62 | 806 |

1. **Parent and Child:** SALE. A son engaged in the mercantile business, and being heavily indebted, sold his entire stock of goods to his father for debts alleged to be due to such father. *Held*, That it devolved on the father to prove the actual consideration paid, and the *bona fides* of the transaction.

2. ———: ———: BONA FIDES. Transactions between relatives, by reason of which strangers who have sold goods to some of such relatives will be deprived of payment therefor, will be scrutinized very closely, and the good faith of the same must be clearly established.

ERROR to the district court for Valley county. Tried below before TIFFANY, J.

*Thomas L. Redlon, E. M. Coffin, E. J. Clements,* and *D. B. Jencks,* for plaintiff in error.

*A. M. Robbins,* for defendant in error.

MAXWELL, J.

Moses Cheesbrough, the defendant in error, is the father of one Elton Cheesbrough, who, in the month of May, 1884, was engaged in the mercantile business at Ord, in Valley county. On the 26th day of May, 1884, Elton Cheesbrough made a bill of sale to the defendant in error ·of "all the goods, wares, and merchandise set forth and listed in the inventory," which is attached to the petition, the consideration expressed being the sum of $2,521.93. The defendant in error thereupon took possession of the goods, and a few days thereafter certain creditors of Elton Cheesbrough caused attachments to be issued and levied on the goods in question. The defendant in error· thereupon recovered the possession of the goods by proceedings in replevin, and on the trial the jury returned a verdict in his favor, and judgment was entered thereon.

The question presented to the trial court, and to this court, is the *bona fides* of the sale from Elton Cheesbrough to his father. The nature of Elton Cheesbrough's business, and the amount of his debts, may be gathered from the first portion of his cross-examination, which is as follows:

Q. Where did you reside before you went into the mercantile business in the store—just before?

A. I came off the railroad here. I had been working between St. Paul and North Loup.

Q. About what time was it that you entered into this business?

A.   I think the first goods I sold in Ord was peanuts and cider, ice cream and lemonade, on the 4th day of July.

Q.   What is the date of your commencing merchandising in this store, that you claim you have sold the goods out of?

A.   I didn't commence my business in this town in that store.

Q.   When did you commence selling goods in Ord?

A.   I told you.

Q.   When was it?

A.   The 4th day of July, I think it was in '82.

Q.   What did your stock consist of then?

A.   It was not a very heavy stock.

Q.   What was it?

A.   Only a barrel of sour cider.

Q.   When did you buy your first stock of dry goods and groceries?

A.   I didn't buy goods first.

Q.   I asked you when you did buy them? You can answer it if you want to.

A.   I bought the first bill of groceries along about the 15th of July, '82.

Q.   Now, then, when did you buy your first bill of dry goods?

A.   I could not state the exact date from memory.

Q.   As near as you can. I am not asking for the exact date; about what time, what year, and what month, as near as you can tell?

A.   It was somewheres towards the spring or in the spring of '83. I could not tell the exact date.

Q.   When was the first time Moses Cheesbrough proposed to buy you out, buy these goods of you?

A.   It was somewheres in the neighborhood of from six to ten days before the sale was made.

Q.   Do you remember the date of the sale?

A.    It was May 26th, '84.

Q.    Who first proposed the sale, you or the old man?

A.    The old gentleman.

Q.    What did he say was the reason he wanted to buy you out?

A.    He said he had let me have money and property at different times, I owed him; he understood I was very hard up; he thought I ought to pay him in preference to anybody else.

Q.    What did you tell him then about being hard up? Did you tell him anything about it?

A.    Yes, sir.

Q.    What did you tell him?

A.    I told him I was.

Q.    How much did you owe at that time, as near as you can tell; of course not to the dollar, the whole indebtedness?

A.    I think it was somewhere in the neighborhood of from $4,500 to $5,000.

Q.    Did you tell him about how much you owed at that time?   Somewhere about as you have told me?

A.    I don't remember now whether I did or not.

He was unable to state the amount of capital that he put into the business. The claims of the attaching creditors are for goods sold to him to carry on his business, which goods he alleges he sold to his father, the principal object being, as he alleges, to pay a certain indebtedness. In proof of this, a note was introduced in evidence, of which the following is a copy:

"KENT, WHEELER Co., NEB., Feb. 6, 1879.

"I promise to .pay Moses Cheesbrough, for value received, the sum of $688 and interest at (7) per cent, one year from date.

"ELTIN D. CHEESBROUGH."

The proof as to the original consideration of this note is of a very unsatisfactory character. It is stated that,

about the year 1872, the defendant in error relinquished a claim on 40 acres of land, for which the son promised to pay him $250. As to the actual value, if anything, of this claim, there is no proof whatever. There is also some proof as to the sale by the father to the son of a few cows, a considerable time before the note was given, and also some other property, the character of which, and amount of the prices agreed to be paid, are not very definite. In addition to this note, the defendant in error let the son have a county order for $104, and a note for $225, to enable the son to purchase two lots in the town of Ord. We find no proof in the record tending to show the value of the county order or of the note in question. In addition to these, the defendant in error claims to have assumed a debt due from Eltin Cheesbrough to Oscar Cheesbrough, a brother of Eltin, for the sum of $500. It will thus be seen that, without computing interest, these claims at their face value amount to $1,517, for which, with interest added, the defendant in error obtained a stock of goods from his son of about the value of $2,600, leaving debts owing to the persons who had sold goods to such son in a very large amount, the exact sum not being shown by the record, of which debts the defendant in error had full notice before the alleged purchase of said goods. Under these circumstances it devolved on the defendant in error clearly to establish the good faith of the transaction, and the actual existence of the several items of the alleged debt owing by the son to him. These facts we think he has failed to prove.

Transactions between relatives, by reason of which such relatives derive an advantage from credit obtained from strangers, will be scrutinized very closely, and the *bona fides* of such transactions must be clearly established. The only portion of the money furnished by the defendant in error to the son, to conduct the business, was the $500 obtained from Oscar Cheesbrough, and perhaps the sums contributed in payment of the lots. The equities of the cred-

itors, therefore, as to all sums in excess of these amounts, seem to be superior to those of the defendant in error.

Eltin Cheesbrough was permitted, against the objection of the plaintiffs herein, to testify to certain payments made by him to certain of his creditors. Such proof is proper on cross-examination, but should not be admitted as evidence in chief in favor of a party, without a complete exhibit of his business during the period involved in the transactions. That is, a party cannot prove his mode of conducting business by isolated facts.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.