J. F. WHITE & SONS, PLAINTIFFS IN ERROR, v. C. C.
WOODRUFF, DEFENDANT IN ERROR.

1. **Instructions** to the jury, as set out at length in the opinion, examined and approved.

2. **Chattel Mortgage:** FRAUD : STATEMENTS OF MORTGAGOR : EVIDENCE. On the 5th day of January, J. A. W., being indebted to one M. in the sum of $500, half of which had become due on the first day of that month, and the other half of which was to become due the first day of March following, executed a note to J. F. W. & Sons, a firm consisting of the father and brothers of said J. A. W., for five hundred dollars, due one year from the date thereof, and to secure the payment of which note he executed to them a chattel mortgage upon all of his property, except certain ungathered corn, consisting of two mares, three horses, two colts, one pony, two cows, and a number of agricultural implements. Before there was any change in the possession of any of said chattels from J. A . W. to J. F. W. & Sons, J. A. W. made certain statements in the absence of J. F. W. & Sons, tending to show an intention on his part to fraudulently dispose of his property for the purpose of avoiding the payment of said debt to M. The assignees of M. recovered a judgment against J. A. W. on a part of said debt, and took in execution a part of said mortgaged chattels ; J. F. W. & Sons brought suit against the sheriff and replevied the chattels so levied on. On the trial the sheriff called witnesses and proved the said statements of J. A. W. On error to this court, *Held*, That under the peculiar facts and circumstances of the case such evidence was admissible.

ERROR to the district court for Johnson county. Tried below before BROADY, J.

*S. P. Davidson*, for plaintiff in error, cited: *Kay v. Noll*, 20 Neb., 380, 386. *Hammond v. Jewett & Co.*, 22 Neb., 363. *Sandwich Mnfg. Co. v. Feary*, Id., 53. *Shapleigh v. Dutcher*, 15 Neb., 563. *Smith v. Evans*, 13 Neb., 314.

*C. K. Chamberlain* and *A. M. Appelget*, for defendant in error, cited: *Knowlton v. Hawes*, 10 Neb., 535.

*Shellenbarger v. Biser,* 5 Neb., 203. *Pomeroy v. Bailey,*
43 N. H., 125. *Osgood v. Eaton,* 63 N. H., 355. *Babb
v. Clemmson,* 12 Serg. & R., 328. *Smith et al. v. Sands,*
17 Neb., 498. *Fredrick v. Allgaeir,* 88 Mo., 598. *Bullis
v. Drake,* 20 Neb., 171.

COBB, J.

This was an action of replevin tried to a jury in the
district court of Johnson county. The property involved
consisted of a mare and two yearling colts. This property
was taken in execution by the defendant, who was then the
sheriff of said county, upon an execution in his hands
issued upon a judgment rendered in favor of T. Appel-
get & Son against John A. White, upon a note given by
said John A. White to one McKinster for the rent of a
certain farm.

The evidence tended to prove that the mare and colts
were originally the property of John A. White. Indeed
this is claimed by both parties. That on or about the 5th
day of January, 1885, said John A. White executed and
delivered to the plaintiffs, who are his father and brothers,
a chattel mortgage on said property, with other property,
to secure the payment of a promissory note of even date
with said mortgage, and running one year from said date,
for the sum of five hundred dollars ; that on or about the
20th day of May, in the same year, the said John A.
White, in consideration of the release and satisfaction of
the said chattel mortgage, and in payment of the said note,
sold and delivered the said mare and colts, with other
property, to the plaintiffs, and executed and delivered to
them an absolute bill of sale thereof; that plaintiffs re-
tained the possession of said property on their farm for
about one week, when it was returned to the possession of
John A. White and Clara A. White, his wife, under an
arrangement by which a part of it was leased to John A.

White and a part of it to Clara A. White, in whose possession it was when levied on by the sheriff. The consideration of said note and chattel mortgage is claimed by the plaintiffs and testified by their witnesses to have been an account held by J. F. White & Son, a firm composed of James F. White, the father, and Frank E. White, a brother of John A. White, for the board of the said John A. White for about two years in 1880 and 1881, feed for his horses during said time, and certain seed wheat and other grain furnished to John A. White by said J. F. White & Son.

There was also evidence on the part of the defendant that, on or about the first day of February, 1885, shortly after the date of the said chattel mortgage, John A. White stated to a witness named F. W. Hutcheson, who was engaged husking corn for said J. A. White on the place which he had rented of McKinster, that he wanted to get a good many teams and get the corn out and get his money for it, and the old fellow might go to the devil for his money. That in answer to witness' question to him as to "how he would fix the personal property," he answered, "he would get it fixed all right." Plaintiffs moved to strike out the above evidence, which motion was overruled. The verdict was for the defendant.

The plantiffs, who bring the cause to this court on error, assign the following errors:

1. The court erred in overruling plaintiffs' motion for a new trial.

2. The court erred in overruling plaintiffs' objections to and admitting improper testimony offered by defendant.

3. The court erred in sustaining defendant's objections and excluding proper testimony offered by plaintiff.

4. The court erred in giving each of the instructions asked by defendant.

5. The court erred in giving each of the instructions given by the court on its own motion.

6. The court erred in that the whole spirit and tenor of the instructions given by the court on its own motion were unfair and prejudicial to said plaintiffs, and suggested to the jury an opinion or impression on the part of the court that defendant should succeed.

7. The court erred in that the form of the judgment is not in accordance with law in replevin cases, and does not permit the plaintiffs to return the property replevied, in compliance with the judgment.

8. The judgment and verdict are contrary to the overwhelming preponderance of the evidence, and are contrary to law.

9. Error of the court in that the amount of the recovery is too large.

Two instructions were given by the court at the request of the plaintiffs, all that were asked by them, so far as appears from the record.

The following instructions requested by the defendant were given:

"1. Transactions between relatives, whereby property is transferred from one to another in payment of an alleged past due indebtedness, by reason of which creditors are deprived of their just dues, will be scrutinized very closely, and the good faith of such transactions must be clearly established.

"2. The court instructs the jury that the law presumes every sale of personal property to be fraudulent and void as against creditors of the seller, unless a change of possession of the property from the seller to the purchaser accompanies and follows the sale, and this change must be an open and visible change, manifested by such outward signs as render it evident to persons dealing with such property that the possession of the former owner as such has ceased.

"3. In this case, although the jury may believe from the evidence that the plaintiffs and the said John A.

White, before the execution introduced in this case was levied upon the property, went through the forms of a sale from the latter to the former, still, if the jury further believe from the evidence that there was no apparent change in the possession of the property accompanying such sale, then the law presumes the sale to have been made with a fraudulent intent on the part of the seller, known to and participated in by the plaintiffs, and in such case the burden of proof is on the plaintiffs to show good faith in the transactions by a preponderance of the evidence.

"5.   The jury are instructed that in order to constitute a *bona fide* sale as to the creditors of the seller, the sale must have been made without notice of a fraudulent intent on the part of the seller and with the money actually paid." Changed by adding, "or that the thing sold was received in payment of a *bona fide* pre-existing debt."

"6.   If the jury find from the evidence that the alleged sale was not made upon a valuable consideration, or was made for the purpose of defrauding creditors of the seller, and with knowledge on the part of the purchaser of such fraudulent intent, you will find for the defendant."

The following instructions were given by the court on its own motion:

"In this action the plaintiffs have replevied from the defendant the property described in the petition. The turning point of the case is, who was entitled to the possession of the property replevied, at the commencement?

"2.   It is conceded in the evidence that at one time in the past John A. White was the owner of the said property.   The plaintiffs claim a purchase of the property from John A. White before the commencement of this action. The defendant represents judgment creditors of John A. White, and claims under an execution levy on the property as the property of John A. White.

"3.   It is the law of the state that every sale made by a vendor of goods and chattels in his possession or under

51

his control, unless the same be accompanied by an immediate delivery and be followed by an actual and continued change of possession of the thing sold, shall be presumed to be fraudulent and void as against the creditors of the vendor, and shall be conclusive of fraud unless it shall be made to appear on the part of the person claiming under such sale that the same was made in good faith and without any intent to defraud such creditor.

" 4. As to the change of possession testified to by the plaintiffs' witnesses at the time of the alleged transfer of the property from John A. White to the plaintiffs, you are to determine from all the surrounding circumstances shown by the evidence whether such change of possession was a real, actual, continued change, or a mere shift or pretense, without an actual, continued change of possession.

" 5. It is also the law that every conveyance of any goods made with intent to hinder, delay, or defraud creditors of their debts or demands as against such creditors shall be void. In order to be void under this principle of law, the purchaser must have participated in the fraudulent intent, or have had notice of the fraudulent intent on the part of the seller, or notice of such facts as would have put a person of ordinary care and prudence on such inquiry as would have led to knowledge of such fraudulent intent on the part of the seller. On these questions it is proper for you to consider the relations of the parties to each other, the surrounding circumstances, the manner of the alleged sale, and the kind of consideration therefor, and determine them from the whole evidence. If there was no actual and continued change of possession following the sale, the burden of proving that the sale was in good faith and valid was upon the plaintiffs. But if there was an immediate delivery at the sale, and an actual and continued change of possession, the burden of proof is upon the defendant to show by a preponderance of the evidence that the sale was void as against the defendant. This distinction

you will bear in mind in considering the other instructions."

The plaintiffs in error in the brief make no special objection to the instructions given as asked by the defendant, their principal objection being to the instructions given by the court on its own motion, and that they were but a repetition in substance of those already given at the request of defendant, and confined chiefly to the question as to whether there was a change of possession of the property at the time of the sale to plaintiffs, and as to the legal consequence to the plaintiff if there was no change of such possession, thus unnecessarily emphasizing and challenging the attention of the jury to these points.

While the instructions are to some extent open to this criticism, I do not think that under the facts of the case they are erroneous. There are, as I conceive, two salient points in the case:

1.　Whether the chattel mortgage was given in good faith, for a *bona fide* debt due from John A. White to J. A. White & Sons; and

2.　Whether there was such an immediate and continued change in the possession of the property as to relieve the plaintiff of the burden of showing affirmatively by evidence the good faith of the transaction.

The second of these considerations demands to be inquired of, first, in point of time. The note and mortgage were executed on the 5th of January. There is no claim of an actual change of the possession of property till some time in the month of May, at which time, as is claimed, in consideration of the discharge and satisfaction of the debt and mortgage, John A. White made an absolute sale of the property to the plaintiffs; and there is some evidence of the execution by him to them, at that time, of a bill of sale thereof.

It appears that at this time the property was actually delivered to the plaintiffs; that they took it into their pos-

session, and kept it on their place for about a week. It was then, under a contract of lease between the plaintiffs and John A. White and wife, returned to the farm occupied by John A. White and wife up to the time it was taken on execution. It does not clearly appear from the evidence whether there were two contracts for the leasing of this property, a part of it to John A. White, and a part to his wife; but White himself testifies that part of it was leased to him, and a portion of it to his wife. It appears that John A. White and wife were at that time living together, as such, in the same house, but there is evidence to the effect that they were both engaged in the cultivation of separate farms, and from all that can be gathered from their evidence, with clearness and certainty, the whole of the leased stock was kept on the place where they lived together. Therefore, conceding that there was an actual change of the possession of the property, it must be admitted that this change was not continuous. While the claim is not directly made by the plaintiffs that there was a continuous change in the possession of the property by reason that before the sale John A. White held the property as owner, and that his second possession of it was in the capacity of lessee, yet such would seem to be the logic of their claim. Without further reasoning the point, or citing authorities, I will say that such claim must be held inadmissible. It therefore devolved on the plaintiffs to prove the *bona fides* of the sale of the property by John A. White to them. This they undertook to do, one of the plaintiffs going on the stand and testifying to facts in relation to it. They also called John A. White and his wife as witnesses for the same purpose, and while the defendant called no witnesses either to disprove such facts, or to establish others directly affecting the sale, the jury failed to find the evidence sufficient to establish its *bona fides* and remove the presumption of law that sales of property under such circumstances by a debtor or a person in

failing circumstances are fraudulent and void as against creditors.

The next contention of the plaintiffs in error is, that the court erred in overruling the plaintiffs' objections to the testimony of witnesses Hutcheson and Whipple of state-ments made by John A. White in conversation with them, tending to the effect that he intended to make such dispo-sition of his property as would prevent the collection of a debt which he owed to one McKinster. The judgment upon which the execution issued, upon which the property involved in this inquiry was taken as the property of John A. White, was rendered upon a note formerly given by John A. White to McKinster for the rent of said farm, and was a portion of the debt referred to, as is alleged, in the conversation with the said witnesses. It cannot be con-tended that the testimony of these witnesses, a synopsis of which is given in the introductory part of this opinion, standing alone, would amount to anything; nor would it be deemed admissible except preceded or to be followed by other evidence on the part of the defendant, or plaintiffs, attacking the *bona fides* of the sale by John A. White of the property in controversy, or, as in the case at bar, where the burden was upon the plaintiffs to establish by the evi-dence the *bona fides* of such sale, they had failed to do so. In such case I think the evidence was admissible.

What I have here said in relation to the evidence of the witnesses Hutcheson and Whipple will apply also to that of the witness John Brennon.

The plaintiffs in error also complain in their brief of the ruling of the trial court in refusing to strike out of the deposition of defendant, which was read in evidence, cer-tain statements made therein of the declarations of John A. White to the defendant at the time of the service of the execution on the property, that all of the property be-longed to his wife, Clara A. White. This evidence was doubtless received by the court upon the authority of prec-

edents which hold that the declarations of a tenant in possession of either real or personal property, as to the title under which he holds, will be received as evidence against him.   While it may be doubtful that such principles of law would justify the admission of the evidence, I do not consider such admission sufficiently prejudicial to the plaintiffs to justify a reversal of this case.

The plaintiffs in error also complain that the judgment in this case is not in the disjunctive, as required in an action of replevin, and the plaintiffs could not satisfy it by a delivery of the property and the payment of the damages and costs.   It is true that the judgment is not in the usual form, as will be seen: "It is, therefore, in accordance with the verdict, considered that the defendant recover from the plaintiffs the possession of the property replevied, and in lieu thereof the said sum of two hundred dollars, and the further sum of one dollar, his damages herein sustained and his costs herein expended."

This judgment is substantially for the return of the replevied property, and in lieu thereof its value of $200. Without approving the form of the judgment, we hold that it is sufficient to enable the plaintiffs to discharge it so far as the value of the property is concerned by its return to the defendant.

The plaintiffs also complain of the judgment for one dollar as damages; that the same is not a merely nominal sum.   I agree to this proposition.   There is no pretense of evidence in the case proving actual damages.   The $200 covers the entire interest of the defendant in the property. He is therefore entitled to merely nominal damages for the purpose of carrying with it the costs of suit, and on this ground alone the judgment will be reversed, and the cause remanded, unless the defendant shall within thirty days from the filing of this opinion enter a remittitur of ninety-five cents of said sum, but in case the same shall be

entered within the time specified, the judgment of the district court is affirmed.

JUDGMENT ACCORDINGLY.

THE other judges concur.