ELI PLUMMER ET AL., APPELLANTS, V. GEORGE W. RUMMEL ET AL., APPELLEES.

[FILED MAY 2, 1889.]

1. **Fraudulent Conveyances**: EVIDENCE.   Where a father, in failing circumstances and unable to pay his debts, conveyed land to his daughter for an alleged consideration stated in the deed, of $1,200, *held*, that it devolved on the daughter to prove the actual consideration paid, and that she purchased the land in good faith.

2. —— : ——.   Transactions between relatives, by reason of which strangers who have sold goods to some of such relatives will be deprived of payment therefor, will be scrutinized very closely, and the good faith of the same must be clearly established.

APPEAL from the district court of Frontier county. Heard below before COCHRAN, J.

*G. M. Lambertson,* and *H. J. Whitmore,* for appellants.

*George H. Stewart,* for appellees.

MAXWELL, J.

This is an action in the nature of a creditor's bill to subject certain real estate in Frontier county, held in the name of Lillie J. McClary, but which the plaintiffs claim is the property of George W. Rummel, to the payment of his debts.

The plaintiffs, for several years, have been engaged in business as wholesale grocers in the city of Lincoln. The defendant, Rummel, from some time in the early part of 1887 until February 13, 1888, was engaged in the retail grocery trade in the same place. During the time he was so engaged he purchased goods of the plaintiffs and became indebted to them in a large amount. To secure credit, he at various times represented to plaintiffs that he was worth certain specified sums over and above all indebtedness, and that he owned land in Frontier county. On the 13th day of February, 1888, he failed in business, and to secure in part the claim of the plaintiffs, he executed to them a chattel mortgage upon his stock of goods for the sum of $1,550. The stock was sold and the proceeds applied upon the debt, leaving a balance of about $775.40 still due to plaintiffs. Judgment was afterward obtained in the county court of Lancaster county for this sum, and transcripts filed in the district courts of both Lancaster and Frontier counties. Executions were issued and returned unsatisfied. By plaintiffs' direction, execution was then levied on certain lands in Frontier county held in the name of Lillie McClary, and this action commenced to subject it to the payment of plaintiffs' claim. On the trial of the cause judgment was rendered in favor of the defendants and the action dismissed.

An examination of the record of the title to the land shows that Mr. Rummel had received a deed to the land in September 1887, and that he had conveyed the land to his daughter, Lillie J. McClary, on December 21, 1887, which

deed was not filed for record until February 16, 1888, three days after Mr. Rummel's failure. The consideration stated in the deed is $1,200, and the grantee assumed a mortgage of $425.00 then on the land.

The plaintiffs contend that this conveyance to Mrs. Mc- Clary was given for no consideration, was to hinder and delay creditors, and is therefore fraudulent and void as to them. In support of their position they prove that Mr. Rummel had represented to them at various times both before and after the date of the deed to Mrs. McClary, and while the debt was being contracted, that he owned this land in Frontier county; that he tried to sell it, and put it in the hands of parties in Lincoln to sell after the 21st of December; that after his failure he claimed to have control of the land and that it was all he had saved from the wreck. It was also shown that the title had actually remained of record in him until three days after his failure; also, that he had executed to certain others of his creditors after his failure a mortgage on land in Illinois which he claimed he had previously conveyed to his son, but which he still owned.

Mrs. McClary, on cross-examination, testified in regard to the transaction:

A. My husband and my father had a land deal for some goods coming to my husband; there still was $262.50; when he came home he told me I could have that, and turned it over to me, and when I went back to Lincoln I told my father I would take the land, as I was wishing to purchase land in Lincoln and thought I could use the land in that case.

Q. Then you never paid your father anything?

A. I paid him $262.50.

Q. Did you have $262.50 in money or in property of any kind?

A. I did; yes, sir.

Q. What was it?

A. It is in land.

Q. In what shape was it in at the time you gave it to your father?

A. In the same shape it is now; I owed nothing on it.

Q. Then you mean to have the court understand that your husband told you you might have $262.50 that your father owed to your husband?

A. Yes, sir.

Q. And that you received, then, from your father, a deed to this land, after that?

A. I did.

Q. Then you never paid your husband anything for this land?

A. My husband and I have deals back and forth in land. I have my own property; he has his.

Q. Did you ever pay your husband anything for this $262.50?

A. Why, he was owing me at the time, so it didn't make any difference.

Mr. McClary also testified on his direct examination:

Q. What is the value of that land, or what was it on the 21st day of December, 1887?

A. Well, I bought it about two months, I think, before that, for $30; on the mortgage.

Q. What was it worth on the market then?

A. Why, I should judge it was worth about ——; it was worth about $50, I should judge, over and above the mortgage; I wouldn't have taken it for that.

Q. Do you know what your wife paid for that piece of land?

A. Well, not exactly; I couldn't say; I wasn't there; but I gave her — I gave her an account against Rummel for $262.50, that is, in some trades that we had had before; I traded part of her stock for some land, and traded then to Mr. Rummel and turned over to her part of the property, and Rummel's account was among.

10

Q. State how the indebtedness of Mr. Rummel to you was created?

A. It was created in a deal I had with him wherein I traded him some land for a stock of groceries, and after the invoice was made there was a balance of $262.50; I can go on still further why it was left in that shape: I thought at that time of keeping the goods and bringing them up here, and he thought of making up the balance in groceries, but afterwards, in coming here, I traded — traded the stock off before they were moved from Lincoln.

Q. Who to?

A. D. R. Callahan, of Curtis; traded him all but the fixtures; those I sold in Lincoln when I went back, so I had no more use for groceries.

Q. State if at the time this conveyance was received from Rummel to your wife, you were indebted to your wife in any amount, and if so, in how much, and in what manner was the indebtedness created?

A. Well, I was indebted to her, I considered, or we considered, in the trade— in the deal of these groceries and the land, about half and half; I traded stock for the land. I traded to him horses, and about half of the horses belonged to her, so she was in about half in the grocery deal, and this was one of the claims I turned over to her. I turned over all the claims and kept what money I got out of it. Well, the other I got in the hotel building up here; that was turned over to her.

In his cross-examination he testified that he traded eight horses, worth $600, for land, and that he traded that land to Rummel, his father-in-law, for $1,600 worth of groceries in Lincoln, and that there was still a balance due from Rummel upon the land of $262.50, which McClary gave to his wife, and was the consideration for the deed in question.

It will be observed that the defendants failed to agree as to the alleged consideration paid to Rummel, and failed to

show that, in fact, they paid any actual consideration for the land. Rummel does not testify, but the testimony is clear and uncontradicted that he claimed to be the owner of the land in dispute, although the title was in the name of his daughter; and he did execute a mortgage to Hargreaves Bros. upon certain real estate near Quincy, Illinois, but saying at the time that the title probably was in the name of his son. The plaintiffs had furnished Rummel with goods to carry on his business in Lincoln, and are entitled to payment therefor from any property possessed by him and not exempt from execution, whether the title of such property is in his own name or not. A court of equity will lay its hand upon such property and apply to the payment of the amount due the judgment creditor. The case in some of its features resembles that of *Bartlett v. Cheesbrough*, 23 Neb. 767, where it was held that transactions between relatives, by reason of which, strangers, who sold goods to some of such relatives, will be deprived of payment therefor, will be scrutinized very closely, and the good faith of the same must be clearly established. It was also held in that case, that it devolved upon the father to prove the actual consideration paid to his son, and the *bona fides* of the transaction.

That, we think, is a correct statement of the law, and if applied to the facts of the case under consideration, the judgment is clearly erroneous. The judgment of the district court is reversed, and a decree will be entered in this court in favor of the plaintiffs and subjecting the land in controversy to the payment of their judgment.

DECREE ACCORDINGLY.

THE other Judges concur.