FRED STEINKRAUS ET AL., APPELLANTS, V. RICHARD KORTH ET AL., APPELLEES.

FILED APRIL 16, 1895.    No. 5915.

1. **Fraudulent Conveyances**: TRANSACTIONS BETWEEN RELATIVES: EVIDENCE.    Where property is conveyed from one relative to another as a payment of an alleged past due indebtedness, and thereby creditors of the party making the conveyance are deprived of their just dues and claims, the transaction will be scrutinized or examined very closely, and its *bona fides* must be clearly established.    *Plummer v. Rummel*, 26 Neb., 147, followed.

2. **Review**: CONFLICTING EVIDENCE.    The finding of a ·trial court based upon conflicting evidence will not be disturbed on appeal to this court unless clearly wrong.

3. **Fraudulent Conveyances**: EVIDENCE.    The evidence in this case examined, and *held* sufficient to sustain the findings of the district court.

APPEAL from the district court of Pierce county.    Heard below before Allen, J.

*Barnes & Tyler* for appellants.

*W. W. Quivey* and *Powers & Hays, contra.*

HARRISON, J.

March 21, 1890, the appellees instituted this action in the district court of Pierce county.    There was alleged in the petition then filed the recovery of judgments' in favor, respectively, of Richard· Korth, Henry Holly, D. R. Alexander & Co., George A. Brooks, the Fidelity Oil Company, Farrell & Co., Jacob Meyer & Co., Tolerton-Stetson Co., C. A. Morrell & Co., King Bros:, E. P. Pickenbrock, and Herman Bros: against one F. Steinkraus, and the issuance of execution on each of them· and the return thereof in-

dorsed no property found. There was also pleaded the
transfer of certain property, including some real estate,
from the judgment debtor to Herman Steinkraus of appel-
lants, the transfer of the real estate being by warranty deed
and, it was further stated, without consideration and with
the intent to hinder, delay, and defraud these and other
creditors, and with the knowledge on the part of the grantee
of Herman Steinkraus of such fraudulent intent and purpose
of the grantor. There was a further allegation of a trans-
fer by assignment of a contract of purchase of certain other
real estate by F. Steinkraus to the Farmers State Bank of
Plainview with fraudulent intent, but it seems that this
branch of the case was, during the progress of the action,
abandoned, and we need give it no further notice. The
relief sought as against the appellants F. and Herman
Steinkraus was the setting aside of the conveyance from
the former to the latter and to subject the real estate de-
scribed in the deed, or the proceeds derived from the sale
thereof, to the payment of the judgment set forth in the
petition. The appellants F. and Herman Steinkraus filed
separate answers, in each of which it was admitted that at
the time stated in the petition F. Steinkraus was the owner
of the real estate described therein, and that he conveyed
the same by deed of general warranty to Herman Stein-
kraus and each and every allegation of the portion of the
petition in which the fraudulent character of such transfer
was pleaded was denied. A trial of the issues resulted in a
decree in favor of the judgment creditors of the amount due
to each, and vacating and annulling the conveyance of the
real estate from F. to Herman Steinkraus, and ordering
the property sold, from which the last mentioned parties
have appealed to this court.

The sole contention of appellants is that the evidence was
insufficient to sustain the finding that the charge of fraud
was proved, or to sustain a decree based upon such finding
The testimony in the case discloses that F. Steinkraus and

Herman were father and son, and that the father, being engaged in business at Plainview, Pierce county, this state, and heavily indebted, on or about the 20th day of December, 1889, conveyed all of his property to the son, including the real estate in controversy in this action. It further appears that prior to and during the year 1876, F. Steinkraus was engaged in business in Norfolk, Nebraska, and that his son Herman, who was living with his father and assisting him in conducting the business, at some time during the year 1876, reached the age of manhood, and at the request of the father remained with him in the store, assisting him as before and making his home with the father. There does not appear to have been any definite arrangement or agreement with reference to what the son was to receive for his services except his board and clothing, which he did receive, and it is also shown that he probably also received at times during the continuance of this arrangement a little money. After the lapse of about three and one-fourth years the son left home and soon afterwards, or during the year 1881, removed to and resided upon some land in Pierce county. May 25, 1881, some business property in Norfolk, owned by the father, was conveyed to the son, the consideration stated in the conveyance being $1,200. This, it is claimed by appellants, was the amount due the son for services he had performed in the store during the three and one-fourth years after he was twenty-one years of age, and that the father, not having money to pay the amount, and the son asking for a settlement, it was agreed that this property should be conveyed to him in payment of the claim. The father remained in possession and occupancy of the premises subsequent to the transfer, and the son received no rents or benefit of them. The father paid for repairs and insurance and also paid the taxes. The appellants testify that he made these payments as a consideration for his use of the property. In 1883, or about two years after the Norfolk property was conveyed

to Herman Steinkraus, it was sold to O. Hirsch for the sum of $5,000, the negotiation which resulted in this disposal being conducted by the father, the son being consulted once or twice in regard to it. Two thousand five hundred dollars of the five thousand dollars was paid, and to secure the balance Hirsch gave a mortgage on the premises purchased by him. The $2,500, of the amount paid, was received by the father and retained by him, the son getting none of it. The appellants testify that it was loaned by the son to the father. Default was made by the purchaser in the payment of the amount secured by the mortgage and the mortgage was foreclosed, and at the sale of the premises in the foreclosure proceedings the son purchased them, but the evidence does not disclose whether he paid any other or further consideration for it than the amount due upon the mortgage which he was foreclosing. This was in 1887. Very soon afterward, and during the same year, the property was again sold, the amount realized being $4,000. The father in this as in the prior sale appears as the party actively engaged in the transaction of sale of the property and received and retained the money, $4,000, paid, it being claimed by appellants that it was loaned to him by the son. The fact of the father being the one who apparently effected these sales of this property is explained by the appellants in their testimony, in the statement that the son was on his farm at some considerable distance from Norfolk, and the father being in the first instance in possession of the property and managing it, and in the second instance in business in Plainview, where he was more likely to meet probable purchasers, attended to the sales as agent for the son. The $2,500 derived from the first sale of the Norfolk property, subsequent to its transfer to the son, and the $4,000 from the second sale, aggregating $6,500, and the interest, although it is nowhere stated from when to when the interest was calculated or at what rate, form the consideration, $7,050, as stated in it, for the conveyance

made from the father to the son during the month of December, 1890, and which was declared void by the decree in this case. We will now revert to the original transfer of .the Norfolk property to the son. There is testimony in the record which tends to show that at the time of this transaction the father was having or expecting a controversy, and probably a lawsuit, with some party in Chicago, and several witnesses testify to conversations with the father or son when both were present, in which it was stated that the original transfer of the Norfolk property was made to the son because of the difficulty with the man who lived in Chicago, and the title was to be allowed to remain in the son's name until it was settled. This evidence is denied by the appellants. It further appears that during the year 1884 the son concluded to engage in the lumber business in the town of Plainview and it was necessary that he should have about $2,500 in money to put into the enterprise. This amount was, as appellants testify, furnished and loaned to him by the father, and repaid a few months subsequent to the time loaned. It will be remembered that at the time this transaction of loan, etc., occurred between the father and son the father was indebted to the son for money derived from the sale of the Norfolk property and stated to have been used by the father as a loan from the son. In December, 1890, when the conveyance was executed, which was set aside by the court in the present action, the father was indebted to various creditors, the sum of such indebtedness being in the aggregate about $7,000, and was unable to pay, and it may be fairly inferred from the testimony that the son had knowledge of these facts in relation to the father's financial circumstances.

The foregoing statement, we think, may be said to be a summary of the majority of the salient facts or points developed in the testimony adduced during the trial of the cause in the district court. There were some other and further facts shown which tended to support the position

of one or the other of the parties litigant, but, as we view
them, they were of minor importance, although corrobora-
tive of the other and prominent facts, and we do not deem
it necessary to quote them.    We have carefully read, ex-
amined, and considered all the testimony and record, and
it presents one of a class of cases where there is a convey-
ance of property from one relative to another, in this case
from father to son, the party making the transfer being in-
volved financially or in debt beyond his ability to pay, and
the apparent consideration for the transfer an indebtedness
for service rendered or a loan made at some time in the
more or less distant past, as the case may be, and of which
there is generally, as in the case at bar, no other evidence
than such verbal proof as may be obtainable of the facts
and circumstances of the transactions which have occurred
between the parties, and from these, combined with the facts
and circumstances attendant upon the transfer, which is the
subject of attack, its character, whether fraudulent or other-
wise, must be established and determined.    In this case it
was clear that if the transaction of December, 1890, be-
tween the father and son was valid, its effect must necessarily
be to hinder and delay the appellees in the collection of
the debts due them from the father, and in fact to deprive
them of their just dues.    The rule in this state as to such
transactions has been established as follows: Where prop-
erty is conveyed from one relative to another as a payment
of an alleged past due indebtedness, and thereby creditors
of the party making the conveyance are deprived of their
just dues and claims, the transaction will be scrutinized or
examined very closely, and its *bona fides* must be clearly es-
tablished. (*Fisher v. Herron,* 22 Neb., 185; *Bartlett v.
Cheesbrough,* 23 Neb., 771; *Plummer v. Rummel,* 26 Neb.,
147; *White v. Woodruff,* 25 Neb., 803.) Applying the
directions of the foregoing rule to the facts developed in
the trial of the case at bar, and searching closely into all
the circumstances of the transfer from the father to the son

and its consideration and its source, and all the facts and circumstances shown by the testimony in any manner affecting it and tending to establish its good faith or lack of it, we reach the conclusion that there was sufficient evidence to sustain the finding of the court that it was fraudulent and invalid, and to warrant the court in annulling it. It is true that the testimony on many points was conflicting, but as we have determined that there was sufficient evidence to support the finding, the case is within the rule of this court that where the finding of the trial court is founded upon conflicting testimony, it will not be disturbed unless clearly wrong. The decree of the district court is

AFFIRMED.