E. J. LA BORDE, EXECUTOR, APPELLEE, V. FARMERS STATE BANK, APPELLEE: EMMA SUHL, APPELLANT.

FILED OCTOBER 6, 1927. NO. 25100.

*Sears, Horan & Shaw,* for appellant.

*E. S. Nickerson* and *William R. Patrick, contra.*

Heard before Goss, C. J., Day, Good, Thompson, and Eberly, JJ., Eldred and Hastings, District Judges.

L. S. Hastings, District Judge.

This action was brought by the executor of the last will and testament of Fred H. C. Suhl, in behalf of the creditors of his testate, against Emma Suhl, the Farmers State Bank of Millard, Nebraska, et al., to have the change in beneficiary in three certain life insurance policies for $10,000 each from his estate to the appellant, Emma Suhl, decreed fraudulent as to his creditors, and to have the same canceled and set aside and said defendants enjoined from transferring and disposing of the proceeds thereof and to impound and recover the part of said funds to which said estate was entitled. Plaintiff's cause of action is predicated upon the following undisputed facts:

On the 26th day of November, 1924, Fred H. C. Suhl was carrying life insurance on his own life in the North-

western Mutual Life Insurance Company in the amount of $50,000. One policy for $20,000 was made payable to Emma Suhl, his wife, and three policies, each in the sum of $10,000, were payable to his estate. On said date, in contemplation of death, the insured, in a writing signed by him, on a blank furnished by the insurance company, changed the beneficiary in the three $10,000 policies from his estate to his wife and delivered the same to an agent of the company to be transmitted by such agent to the home office of the insurance company in Milwaukee, Wisconsin. The policies were then in the possession of the insurance company at their home office. He died insolvent two days later and his written change of beneficiaries was not received by the company at their home office until a few hours after his death. The insurance company made an indorsement upon said policies in conformity with the change of beneficiary as made by him. The money due on the four policies, after deducting the loans thereon, amounting to $46,461.97, was paid to his wife on December 4, 1924, by the insurance company. Upon receipt of the insurance money, appellant deposited same in the defendant bank and said bank issued to her, against said deposit, its cashier's check for $20,000 and a draft for the sum of $10,000 drawn on the Merchant's National Bank of Omaha. The actual funds remained in the defendant bank and were there at the time of the commencement of this action and at the time the decree was entered. At the time the beneficiary was changed, the debts of the insured approximated $90,000, more than $50,000 of which were unsecured. At the time this action was commenced claims had been allowed against the estate for the amount of said indebtedness. The assets of the estate other than the proceeds of the insurance are sufficient only to pay a small part thereof. A part of the insured's indebtedness was incurred by the insured upon the representation that he carried the three policies of insurance payable to his estate.

The dates, amounts and annual premiums of said life

insurance policies carried by Fred H. C. Suhl at the time of his death are as follows:

One dated April 15, 1918, for $10,000 with an annual premium of $246.36.

One dated April 23, 1918, for $10,000 with an annual premium of $246.30.

One dated March 20, 1919, for $10,000 with an annual premium of $253.40.

One dated October 23, 1919, for $20,000 with an annual premium of $521.80.

The appellant in her answer alleged that she had a separate estate which she received by inheritance from her father, and that in good faith she loaned her husband money derived therefrom, and that shortly before his death, in payment of and to secure payment of said indebtedness, he duly assigned said policies of insurance to defendant, and that defendant accepted the same in good faith in payment of and as security for payment of said indebtedness. She further alleged that the amount of insurance she had received was less than the amount owing from said deceased and the amount exempt to her under and by virtue of section 7881, Comp. St. 1922. She prayed that the action of plaintiff be dismissed, that so much of said insurance as was purchasable by annual payments of $500 should be decreed to be held exempt from the claims of the creditors of insured, and that the policies be decreed to have been received in satisfaction of and as security of the indebtedness of the deceased to the defendant.

The reply was a general denial.

The trial court found that the change in beneficiaries in the three $10,000 policies was fraudulent as to the creditors of the insured, and that the transfer of such insurance should be canceled and set aside. The court further found that there was exempt to the defendant, Emma Suhl, as the beneficiary named in the $20,000 policy, a sum equal to a policy on which the annual premium did not exceed $500, and that the proceeds of all insurance over and above that amount inured to the creditors of Fred H. C. Suhl. The court

ordered that the defendant Emma Suhl and the Farmers State Bank, out of the funds held by them, forthwith pay to the clerk of the court the sum of $27,803.53 to the account of plaintiff for the benefit of the estate of Fred H. C. Suhl for use in payment of claims and debts against said estate and the administration expenses thereof, with 7 per cent. interest from the date of said decree, and enjoined said defendants from transferring or in any manner disposing of said amount except as ordered.

The defendant, Emma Suhl, prosecutes appeal from said decree.

Prior to the submission of this case appellee filed a motion to dismiss the appeal of the appellant, Emma Suhl. The motion was submitted with the case. The record shows that, after the rendition of the judgment and before an appeal was taken, the defendant bank paid into the district court the sum of $28,029.58 in accordance with the decree, and at that time the defendant, Emma Suhl, appeared and objected and reserved an exception to said payment by her codefendant. The principal ground of the motion and the only one that merits consideration is that, by the payment of the sum of $28,029.58 into the district court in compliance with said decree, no real issue is presented here for determination. Counsel for appellee filed their affidavit in support of the motion. It appears from the affidavit that the appellant indorsed a cashier's check issued to her on the defendant bank in the sum of $20,000 and a draft on the Merchants National Bank of Omaha issued by the defendant bank to her for the sum of $10,000, same being part of the proceeds derived from the insurance, and delivered same to the defendant bank, and that the cashier of defendant bank thereupon placed said money in a special fund in said bank and drew a check on said fund payable to the clerk of the court and delivered the same to him pursuant to the decree of the court. It is contended, under the facts stated, that payment by the bank amounted to a confession or recognition of the correctness or validity of the judgment by appellant, and that her objection to the

payment of the money into court by her codefendant was only a pretext on which to base her appeal to this court, and that by such compliance with the decree there is nothing left upon which a judgment of reversal can operate. The defendant bank at no time claimed any interest in the money, the subject of litigation; it was simply the custodian of the fund and only a nominal defendant. The bank might well desire to pay the money into court and thus be relieved of any further liability. The appellant has shown no intention of abandoning her appeal, and we are satisfied that she did not intend that the payment of the money by the defendant bank into court should be regarded as a compliance on her part with the judgment of the court so as to deprive her of the right of appeal. So far as the record shows, the money has never been disbursed and is still in the district court subject to any disposition that this court may order made thereof. The only parties who have any interest in the money in question who can be affected by this appeal are the appellee and the appellant and their rights thereto can as well be determined with the money in court as it could be if the defendant bank was still the custodian thereof. We conclude that the payment of the money, the subject of litigation, into court by the defendant bank under the facts stated did not thereby deprive the appellant claiming such fund of the right of appeal from the decree adverse to her claim thereto. *Sanford v. First Nat. Bank,* 94 Ia. 680. The cases cited by appellee are not applicable to the facts herein. The motion is overruled.

The appellant assigns as error the finding of the trial court "that the change in beneficiaries in said three policies from the estate to the appellant is fraudulent as to creditors and should be set aside." It is the contention of counsel for appellant that the evidence establishes that the insured was indebted to appellant at the time of the transfer of said policies in about the sum of $20,800 for money loaned to him by her from her separate estate, and that she was entitled to have set off to her so much of the

proceeds of said insurance as would pay the indebtedness due her and as would be exempt to her under section 7881, Comp. St. 1922.

In this connection it is claimed by counsel for appellee that there was no actual change in beneficiaries in the three policies prior to the death of the insured, in that the indorsement of such change was not made by the insurance company thereon until after the death of the insured and that therefore the estate was entitled to the proceeds of said insurance. Whether such change was made depends upon the precise wording of the policies in question. The policies all contain this provision:

"The insured may change any beneficiary not irrevocably designated, but that no such change shall be effective unless made in writing and filed in the home office of the company (accompanied by this policy for suitable indorsement) prior to or at the time this policy became payable."

The policies also provide that the insurance should become payable upon proof of the death of the insured. In considering a similar question in the case of *Goodrich v. Equitable Life Assurance Society*, 111 Neb. 616, it is said in the opinion by Judge Day:

"In some of these cases where the insured has not an unconditional right to change the beneficiary, and the language used seems to require that some exercise of judgment on the part of the company is essential to the change of beneficiary, it is held that, notwithstanding the insured may have done all that is required of him, but dies before the insurer's consent is given, the change of beneficiary is not effected. The question in each particular case, therefore, is ordinarily whether the acts required on the part of the company are essential parts of the contract or mere ministerial and former details."

Applying the foregoing as the correct rule in construing the provisions in the policies in question, the question arises: Were the acts required by the company essential parts of the contract of insurance or merely ministerial

tion required that the change of beneficiary be made in writing by the insured. This was done upon a blank furnished by the company and transmitted by its agent to the home office of the insurance company. Under such provisions it was required that such written change of beneficiary be filed in the home office of the company before the policy became payable. This was done, although not received by the company until after the death of the insured. The indorsement of the change of beneficiary thereon by the company was, under said provisions of the policies, purely a ministerial act. It required no exercise of judgment on the part of the company in relation thereto. The company recognized the change and paid the proceeds of the insurance accordingly. The change made in the beneficiary was effective under the terms of the policies so as to entitle appellant to the proceeds thereof if such change was not fraudulent as to the creditors of the insured. The principal question involved herein is: Was the change. in beneficiary valid as against her husband's creditors on account of money loaned to him from her separate estate? The effect of the transfer of the insurance from her husband's estate to her while he was insolvent was to put the proceeds of such insurance beyond the reach of his creditors and the transaction is presumptively fraudulent, and the burden of proof was upon the appellant to establish the *bona fides* of such transaction. *Carson v. Stevens*, 40 Neb. 112; *Kirchman v. Kratky*, 51 Neb. 191; *Glass v. Zutavern*, 43 Neb. 334; *Jansen v. Lewis*, 52 Neb. 556; *Fisher v. Herron*, 22 Neb. 183; *Bartlett v. Cheesbrough*, 23 Neb. 767; *Plummer v. Rummell*, 26 Neb. 142; *White & Sons v. Woodruff*, 25 Neb. 797.

Briefly summarized, the evidence upon the question involved shows that appellant owned eighty acres of land when she was married to Fred H. C. Suhl, which she had inherited from her father. This eighty was sold in the fall of 1919 for $20,800. Eighteen-hundred dollars was paid at the time the contract of sale was made and the balance on March 1, 1920. The evidence does not show what be-

came of the $1,800. Nineteen-thousand dollars was deposited in the Farmers State Bank of Millard, in a joint account of herself and husband, about March 1, 1920. The evidence does not show how much money the husband had on deposit in the bank at the time the $19,000 was deposited. It appears that the husband, soon after the deposit of said money in the bank, drew checks on said account as follows: $8,000 to his father; $9,000 in payment of an indebtedness that he owed to the bank, $5,000 of which had been borrowed from the bank to make the initial payment on 480 acres of land in Keith county, Nebraska, which he had purchased on contract in the fall of 1919; and $1,288 to Payne Brothers. The evidence shows that the purchase price of the Keith county land was $50,000. Five-thousand dollars was paid, as stated, at the time of the making of the contract; $23,000 was to be paid on March 1, 1920; for the balance of the purchase price, mortgages then on the land were to be assumed. The evidence further shows that on the 4th day of March, 1920, the husband deposited between $12,000 and $13,000 in the joint account of himself and wife in said bank, and no further deposits are shown to have been made in that account up to the time the Keith county land was settled for on March 23, 1920. Neither does it appear from the evidence that from the time that his wife deposited the $19,000 in the bank on March 1, 1920, up to March 23, 1920, any part on deposit therein was withdrawn from said account except as hereinbefore stated. On March 23, 1920, the bank paid a check drawn thereon by the husband for $22,918 in payment for the Keith county land. It would appear from this that the husband must have had about $10,000 of his own money in said bank at the time appellant's $19,000 was deposited. On the payment of the purchase price over and above the incumbrances on the land, the same was deeded jointly to appellant and her husband, Fred H. C. Suhl. The evidence further shows that before the Keith county land was purchased appellant and her husband looked over the land together, and she stated that

she was going to have the 160 acres of the land that had the improvements on. After the contract for the purchase of the land had been entered into by her husband and $5,000 paid down thereon, she had a conversation with her father-in-law, in which he told her that "it didn't look so well; that he thought they had better let the $5,000 go and stay where they were," and that she said "that it was all right the way it was; that she was getting more out of it that way, out there." After the death of her husband and while his estate was in the progress of settlement, she made a statement in the presence of the county judge and others "that she was the owner of 80 acres of land in Sarpy county which she had sold and put the proceeds into Keith county land." She denied making these statements or that she knew very much about the purchase of the Keith county land and claimed that she loaned the money to her husband.

It is claimed that certain statements made by her husband to the insurance agent who made the transfers of the insurance policies tend to support her claim that he was indebted to her. The statements in substance were that he wanted to transfer the policies to her because he had "went through with about all of her property." These statements made by the husband have little probative force upon the question involved. The Keith county land had been purchased when, as a matter of common knowledge, land values were at about their highest point, and the land had decreased in value from that time until at the time of his death it was worth but little more than the incumbrance against it, and his statements probably refer to the fact that he had lost her money by making their joint investment. We have nothing but her bare statement that she loaned the money to her husband. On the other hand, the facts and circumstances disclosed by the evidence seem quite convincing that she invested her money in the Keith county land. We are convinced from a careful examination of the evidence that appellant has not established that her husband was indebted to her at the time of the transfer of the insurance policies, therefore she does not have any

claim as against his creditors to any part of the proceeds of such insurance on account thereof. We conclude that under the evidence the change in beneficiary from the estate of the husband to his wife either as security for an alleged indebtedness or as payment thereof was fraudulent as to his creditors.

Counsel for appellant further contends that, should it be found from a consideration of the evidence that the insured was not indebted to appellant at the time of the change in beneficiaries on the three policies in question, such change would be valid under section 7881, Comp. St. 1922, and taking into consideration the $20,000 policy in which she was named as beneficiary, that she would be entitled to so much of the proceeds of such insurance on all of said policies as a $500 annual premium would purchase, and that the remainder of said funds would inure to the benefit of the creditors. That statute provides:

"All moneys and all and every benefit accruing under any policy or certificate payable at the death of the insured where the annual premium thereon, including all others on like policies, does not exceed five hundred dollars, shall be exempt from the claims of creditors when the person entitled thereto is not the executor or administrator of the insured or of the beneficiary. And when the annual premium thereon shall exceed five hundred dollars, such exemption shall not apply to such excess, but all money accruing thereunder, or under like policies, by virtue of such excess, shall inure to the benefit of the creditors of the person paying the same, whether such person is the insured or a beneficiary."

Under the statute all moneys and benefits accruing under any policy or certificate payable at death of the insured, where the insured pays the premium thereon, are not exempt from the claims of creditors of the insured when the person entitled thereto is the executor or administrator of the insured. The effect of the change in beneficiary from his estate to his wife was to make a part of the proceeds

thereof exempt from the claims of his creditors when, otherwise, this would not have been the case. Credit was extended to him on account of having such insurance payable to him. When the insured made the change of beneficiaries in the policies, he made the same in contemplation of impending death. He died two days after making the change. The fact that the insured was about to die at the time the change was made gave to the policies a pecuniary value nearly equal to the amount which the insurance company on his death would be required to pay under the terms of the policies. The estate of the insured, but for the change in beneficiary, would have been entitled to have received the full amount payable thereon at his death. If the change in beneficiary had been made at a time when the insured had a normal expectancy of life, even though he was insolvent, the change might have been valid as against his creditors. But under the facts herein he could not, while insolvent, change his beneficiary and so divert from the claims of his creditors so much of the proceeds as would become exempt, under the statute, by reason of such change. The change in beneficiaries under such circumstances was fraudulent as to his creditors. The following cases support the conclusion reached: *Navassa Guano Co. v. Cockfield*, 165 C. C. A. 363, 6 A. L. R. 1168, and note; *Burton v. Farinholt*, 86 N. Car. 260; *Ionia County Savings Bank v. McLean*, 84 Mich. 625; *Friedman Bros. v. Fennell*, 94 Ala. 570; 12 R. C. L. 511, sec. 41. The trial court was right in finding that the appellant did not have any claim to any part of the proceeds derived from said three insurance policies, and in setting aside and canceling the transfer thereof.

The trial court found that under the statute the appellant was entitled to all the proceeds of the $20,000 policy in which she was named as beneficiary and on which there was a premium of $521.80 payable annually; the proceeds of which, after deducting the loans made thereon by insured, amounted to $18,658.44. This was all that she was entitled to.

Appellant further insists that the executor is not authorized by law to bring this action and that the same should be dismissed. This is without merit. Section 1329, Comp. St. 1922, expressly gives an executor or administrator authority to commence and maintain an action of this kind.

It is further urged by appellant that section 7881, Comp. St. 1922, is unconstitutional and void. The appellant is not in a position to raise this question. She invoked the protection of the statute and thereby treated the same as constitutional and valid. The rule is: "A party invoking the provisions of a statute is not in a position to raise the question as to its constitutionality." *Ross v. Lipscomb,* 83 S. Car. 136.

The decree is right, and is

AFFIRMED.