THE POLISH NATIONAL ALLIANCE OF THE UNITED STATES OF NORTH AMERICA

*v.*

ANTON NAGRABSKI et al.

[Decided July 20th, 1906.]

The laws of a mutual benefit organization provided that the beneficiary named in a certificate might be changed by a return of the certificate and the issuance of another, the renunciation of the original certificate, as well as the settlement of the other, to be made in writing, signed by the member and the president and secretary of the local group, and sent to the general secretary.—*Held*, that where the husband of a member obtained possession of the original certificate in which he was the beneficiary, and refused to deliver it, and the member appeared before a notary and made oath to a writing, signed by her, to the effect that one other than the husband should be regarded as the beneficiary, and the paper was delivered to the secretary of the local group, who signed it and forwarded it to the general secretary, as between the beneficiary named in the paper executed by the member and the husband, the former was entitled to. the proceeds of the certificate.

---

On bill of interpleader by the Polish National Alliance of the United States of North America against Anton Nagrabski and others to determine the rights of defendants in a benefit certificate issued by complainant.

*Mr. Linton Satterthwait,* for the defendant Anton Nagrabski.

*Mr. John H. Backes,* for the defendant Mary Sintak.

BERGEN, V. C.

The complainant, a beneficial organization, issued its certificate of membership to Franciska Nagrabski, in which it agreed to pay, upon satisfactory proof of her death, the sum of $300 to Anton Nagrabski, her husband, "provided no other certificate shall have been issued upon the demand of the member." The wife, Franciska, died May 10th, 1905, and shortly before her death undertook to change the beneficiary named in the certificate from her husband to Mary Sintak, her mother, and a dispute as to the rights of the parties having arisen, the association filed its bill of complaint calling upon these claimants to interplead, and having paid the fund into court, the decree usual in such cases was made.

The defendants appeared and stated the grounds of their respective claims. The husband rests his right upon the certificate now in his possession, in which he is the designated beneficiary, claiming that no legal change has been made in the manner required by the certificate and the constitution and by-laws of the association. The parts of the by-laws which relate to the questions before us are as follows:

"Section 6. A beneficiary cannot be designated by will, nor can the benefit payable on the member's death be disposed of, altered, or otherwise in any manner controlled, assigned or pledged, or in any manner diverted from or paid to anyone other than the person or persons named in the benefit certificate by either the member or his beneficiaries, excepting in the manner expressly stated in the laws of the alliance.

"Section 7. A member in good standing may at any time return his certificate and demand that a new one be given him payable to such heir or heirs as he shall direct, upon the payment of ten cents for that certificate. Such renunciation of one certificate, as well as the settlement of the other, must be made in writing, signed by the member, president and financial secretary of the group, and shall be sent direct to the general secretary, with the old certificate enclosed, and the fee required for the new one.

"Section 8. The change of the beneficiary shall take effect upon the delivery of the old benefit certificate, the written surrender, and direction of change of beneficiary, and the payment of the fee of twenty-five cents."

Section 7, as above set out, follows the translation published in English, but I have accepted the version testified to as correct, rather than the disputed, unverified publication, to support which no attempt was made.

The other claimant, Mary Sintak, rests her claim to the fund upon the following facts: Franciska, a few weeks before her death, left her husband's home and went to that of her mother, and the wife gave him the key of her trunk, which remained at his house, for the purpose, as he testifies, of allowing him to have possession of the certificate. Whether such was her purpose or not, the fact is that with the key he was able to open the trunk, and did thereby obtain the certificate.

On April 10th, while confined to her bed, reduced and weakened by the pulmonary disease from which she was slowly dying, she determined to give to her mother the benefit of the certificate, rather than her husband, and sent for a notary public, who prepared a paper-writing as follows:

"Franciska Nagrabski, residing at number 172 Jersey street, Trenton, N. J., personally appeared before me, a notary public of the State of New Jersey, being duly sworn according to law, upon her oath deposes and says that she made demand on her husband, Anton Nagrabski, to deliver her policy of insurance in the Zwiarek Narodowy Polski to her, and that he refused to deliver the same to her."

This paper was signed and sworn to by Franciska before the notary who prepared it, and it was then taken to the secretary of the group of the general society of which she was a member, for the purpose of having the beneficiary changed. The secretary called the attention of the notary to the fact that no beneficiary was named, whereupon the notary carried the paper to the bedside of Franciska, and, with her consent, added: "I hereby assign such policy from my husband to my mother, Mary Sintak, as beneficiary." After this addition the oath was again administered, although no change was made in the jurat, but I do not consider this important, for the legal effect of the paper does not depend upon the method of its verification. After its alteration the paper was delivered to the secretary of the group, who signed it and attached the seal of the group, but it was never signed by the president of the group. He was asked to do so, but declined to act except at a meeting of the members, but before such a meeting was held Franciska died. The paper, in its general form, was forwarded to the general secretary, but no action was taken by him before her death.

The question presented is, Has the member sufficiently complied with the rules of the association to justify a holding that, in equity, a change in the beneficiary has been lawfully accomplished?

I am satisfied from the evidence that it was the intention of the wife to change the beneficiary, but to carry out this intention she was required (1) to surrender the outstanding certificate and demand a new one; (2) to manifest the surrender or renunciation, and name the new beneficiary she desired in a writing, to be signed by herself, the president and secretary of the group. As the present contest does not involve any rights of the association, I am not disposed to give the husband any benefit arising from the non-delivery of the certificate, because it sufficiently appears that the wife, and those acting for her, made every reasonable effort she was called on to make to obtain the certificate, in order that she might return it, and the refusal of the husband to give it up ought not, in determining the equities between the husband and the new beneficiary, allow him an advantage which he would not have had if he had complied with the wife's request, for no one is entitled to the benefit of his wrong-doing.

I am also of the opinion that the paper executed by the wife and presented to the secretary is, although crude in form, notice to the association that she had appointed a new beneficiary, and is a sufficient application by her for a new certificate, in which, by her direction in writing, her mother was to be named the beneficiary, and that when she delivered the paper to the secretary of the subordinate branch of the alliance, and it was then by him, as the evidence shows, sent to the secretary of the order, she had done all she could to effectuate her intention. Under the by-laws a member of this alliance has a legal right to change his beneficiary whenever he desires, and the consent of the alliance does not appear to be required, for under section 7 a member may at any time return his certificate and demand that a new one be given him, payable as he shall direct, and that upon the return of the certificate, if he be then in good standing, it is the duty of the association to issue it. It is admitted that the member was in good standing, and that the non-surrender of the

certificate resulted from the refusal of one of the claimants to surrender it. While the non-surrender, if set up by the alliance in defence of a common-law action brought by the new beneficiary against it, might be available to the alliance, it cannot be permitted to aid one who is wholly responsible for the situation. With these questions disposed of, all that remained to be done by the alliance to perfect the new designation was simply ministerial, for if the member was in good standing, and made his written application for a new certificate, the president of the local group could not refuse to sign it, nor could the general officers of the alliance refuse to comply with the member's direction, and in equity that which should have been done will be considered to have been done. "If the insured has pursued the course pointed out by the laws of the association, and has done all in his power to change the beneficiary, but before the new certificate is actually issued he dies, a court of equity will decree that to be done which ought to have been done, and act as though the certificate had been issued." *Supreme Conclave Royal Adelphia* v. *Cappella, 41 Fed. Rep. 1.* The fund is now in a court of equity to be disposed of on equitable principles, and I am persuaded that, as between the parties to this contest, the equities favor the claim of the mother, and will advise that it be so decreed. My attention has been called to some authorities expressing the judgment of this court upon cases which, it is claimed, bear upon this controversy, to which I will briefly refer. *American Legion of Honor* v. *Smith, 45 N. J. Eq. (18 Stew.) 466.* In this case a written application to change the beneficiary was made and refused, and the court declined to recognize the nomination of a new beneficiary because the by-laws, which constituted a part of the contract, declared that no act of a member, done for the purpose of changing his beneficiary, should be effective until such act had been ratified and approved by the corporation, and it was held that the approval or ratification was a material part of the contract. But such ratification is not required by the by-laws of this alliance.

In *Grand Lodge Ancient Order United Workmen* v. *Connolly, 58 N. J. Eq. (13 Dick.) 180,* the by-laws required a written application whenever a change in the beneficiary was desired,

but all the member did in that case was to give to the officers of the lodge notice that he wished the policy made payable to his children, and the officer informed him that all it was necessary for him to do was to hand the certificate to the new beneficiary. The court held that this was not a compliance with the by-laws, for no written application was presented, and that the powers of the officers of the subordinate lodge were merely ministerial, and their statement to the member, upon which he relied, was not a waiver by the association of the by-laws.

In *Pennsylvania Railroad Co.* v. *Warren, 69 N. J. Eq. (3 Robb.) 706,* a member had the right, in his original application or subsequently, to designate a beneficiary, subject to the approval of the superintendent of the relief department, and it was held that in the absence of a written application, and of the approval of the designation by the officer, a change had not been perfected. It will be observed that in all of these cases either the application had not been made or the necessary approval by the officers of the company was wanting, and as neither of these conditions is applicable here, the cases cited afford no support to the husband's claim.