The defendant, Metropolitan Life Insurance Company, issued a group life insurance policy to the John A. Roebling Sons Company of Trenton, upon the lives of its employes, entitling the beneficiary designated by the employe to $1,000 at death, and $2,000 if death be due to violence. A certificate issued under the policy to John Kish, an employe, who designated Charles Getz, uncle in Roumania, as beneficiary. Kish was injured by an automobile and died seven days later in a Trenton hospital, January 1st, 1930. The day before, he designated the complainant, John Papp, as beneficiary. The request for the change and the certificate reached the insurance *Page 523 
company after Kish died. The insurance company, with notice of the change of beneficiary, paid Getz. The complainant as equitable beneficiary sues to compel a formal change of beneficiaries and to recover the insurance.
The objection that Kish was incompetent when he made the change of beneficiary is not sustained. Three days before he died pneumonia developed and on December 30th and 31st the disease was in full bloom, his temperature ranged around one hundred and four degrees, and he was desperately ill and at times semi-delirious, so much so that he tore off the splints from his injured arms, tried to remove those on his legs and it was difficult to keep him abed. The attending physician and his assistant expressed the opinion that with pneumonia and a temperature of one hundred and four degrees he was incapable of understanding the transaction. On the other hand, a specialist in this disease stated that temperature in pneumonia does not mean anything, is not an indication of delirium and that a patient an hour or two after delirium may be perfectly normal. On the 30th, when the doctors regarded him as semi-delirious and irresponsible, he made his confession and the priest says he was rational and clear of understanding, otherwise he would not and, in conscience, according to the laws of the church, could not have given him Holy Communion. When he signed the change of beneficiary the notary, a justice of the peace called in to prepare the document, realizing that Kish was very sick, examined him to satisfy himself of his competency. He testifies that he was properly orientated and that Kish was sensible of the affair in hand and expressed his wishes with intelligence. The apparent conflict may have for its solution that Kish could not speak English and the doctors may have, to some extent, misinterpreted his mutterings as the rambling of delirium, whereas with the priest and notary, who spoke his mother tongue, and the other witnesses — fellow countrymen — he was at home, and there was mutual comprehension. The principles that obtain in the execution of wills are applicable and a testament in the circumstances would not be denied probate for incompetence. *Page 524 
The objection that the change of beneficiary was ineffectual, because incomplete, is sound at law, but not in equity. The policy reads:
"Section 9: Change of Beneficiary. — Any employe insured hereunder may, from time to time, change the beneficiary by filing written notice thereof with the company accompanied by the certificate and certificate riders — if any — of such employe. Such change shall take effect upon endorsement thereof by the company on such certificate and certificate riders — if any — and unless the certificate and all certificate riders — if any — are so endorsed, the change shall not take effect. After such endorsement, the change shall relate back and take effect as of the date the employe signed said written notice of change, whether or not the employe be living at the time of such endorsement or not, but without prejudice to the company on account of any payment made by it before receipt of such written notice."
The day before the change was made, Kish signified his intention to Papp to substitute him as beneficiary, to secure a debt of $500, and when Papp and his two friends called at the hospital the next morning, they came prepared with a regulation form of substitution furnished by the insurance company. Kish told them to get Jacobs, the notary, whom he knew spoke his language. With Jacobs they went to the insurance company's local office in Trenton for instructions, and being informed that the certificate and the request must be sent to the company's home office in New York, the four went to Kish's lodging in Roebling, a nearby town, and returned with the certificate to the hospital, where Jacobs filled in the form, Kish executed it with his mark, one of the friends signed as witness, Jacobs affixed his name and office and his notarial seal, and they took it and the certificate away with them to Jacobs' office, where he enclosed the documents in an envelope addressed to the insurance company's New York office, and instructed them to mail it. Instead of mailing in Trenton, they took the package back to Roebling. It was late, the post office was closed, as it was the next day, New Year's Day, and on the second or third day they gave the papers to the employer and they were forwarded to the insurance company, which received them January 24th.
Had the documents reached the company before Kish died, there could be no question as to the effectiveness of the transfer in equity, though the policy provided that the change *Page 525 
should not take effect until endorsed by the insurance company. It was so held by Vice-Chancellor Leaming in PrudentialInsurance Co. v. Reid, 107 N.J. Eq. 338, who, treating the endorsement as a mere ministerial act, enforced the change, in that case complete but for the endorsement, in compliance with the maxim that "equity regards that as done which ought to be done."
Here, however, we are dealing with a change of beneficiary not as far advanced in the effort as in the Reid Case, where the request was not in the hands of the insurance company and the ministerial act was not incumbent in the lifetime of the insured. The rule at law is, undoubtedly, that the change in the manner prescribed by the policy must be absolutely complete in the lifetime of the insured, and that the beneficiary has a vested right at death if the change is not accordingly perfected, but there are three well established exceptions to the rule of strict compliance, one of them being that "if the insured has pursued the course provided in the policy and has done all that lies in his power to change the beneficiary, but dies before a new certificate is issued, a court of equity will treat such certificate as having been issued." Supreme Conclave, RoyalAdelphia v. Cappella, 41 Fed. Rep. 1; Couch Ins. § 323.
Whenever invoked in the proper forum and upon satisfactory proof that the insured has strictly met the requirements of the equity rule, it has received affirmance. None denies the rule. Our court of errors and appeals recently, in Prudential Insurance Co. v.Swanson, 111 N.J. Eq. 477, reiterated it. There is divergence of view as to its application. In some instances the contract itself forbids it, in others, the facts have not warranted it. It is not cognizable at law and it is not always set up in equity, and hence, confusion in the cases.
These are a few of the cases, and there are many theories cited, applying the equity rule, where the substitution reached the insurance company after death. Hoskins v. Hoskins, 231 Ky. 5; 20 S.W. Rep. 2d 1029; Johnston v. Kearns, 107 Cal.App. 557; 290 Pac. Rep. 640; LaBorde v. Farmers State Bank,116 Neb. 33; 215 N.W. Rep. 559; Mutual Life Insurance Co. v.Lowther, 22 Colo. App. 622; 126 Pac. Rep. *Page 526 882; Wentworth v. Equitable Life Assurance Society, 65 Utah 581; 238 Pac. Rep. 648; Barrett v. Barrett, 173 Ga. 375;160 S.E. Rep. 399; Manning v. Ancient Order of United Workmen,86 Ky. 136; 5 S.W. Rep. 385; State Mutual Life Insurance Co. v.Bessett, 41 R.I. 54; 102 Atl. Rep. 727. In the last cited case, death intervening between the deposit of the notice in the mail and its delivery at the home office was regarded as one of the contingencies making it impossible to complete the change after all had been done that could be done by the insured.
These cases appear to expound a contrary doctrine. Fink v.Fink, 171 N.Y. 616; 64 N.E. Rep. 506. The suit was at law. The court of appeals held that the question was one of title, and the power of appointment not having been strictly and fully exercised, the beneficiary's rights vested at death and the company became her debtor. The equity rule was not involved. The case was distinguished in White v. White, 194 N.Y. Supp. 114, a suit in equity, where the change from mother to wife was made on the day of death, but did not reach the Metropolitan Life Insurance Company until the day after. The court pointed to the distinction between the rule at law and in equity, and, holding that there was substantial compliance with the requirements as to change of beneficiary, and applying the equity maxim, awarded the fund to the wife. In Freund v. Freund, 218 Ill. 189;75 N.E. Rep. 925, the court, deeming the endorsement on the policy by the company required the exercise of judgment, and that it was not simply a ministerial act, because the insurance laws of New York required the consent of the insurer to a change, held that the equitable rule did not apply.
In these cases, delays of the agencies selected to make delivery to the insurers were held to be defaults of the insured, in doing all things possible, and it was held they were not within the equity rule. Knights of Maccabees of the World v.Sackett, 34 Mont. 357; 86 Pac. Rep. 423; Lewis v. MetropolitanLife Insurance Co., 17 La. App. 143; 142 So. Rep. 721, and NewYork Life Insurance Co. v. Murtagh, 137 La. 760;69 So. Rep. 165.
 Prudential Insurance Co. v. Swanson, supra, is an instance *Page 527 
where the insured did not extend himself to do all he could to perfect the substitution, as are Kochanek v. PrudentialInsurance Co., 262 Mass. 174;. 159 N.E. Rep. 520; Rollins v.McHatton, 16 Colo. 203; 27 Pac. Rep. 254, and Schoenholz v.New York Life Insurance Co., 234 N.Y. 24.
In Polish National Alliance v. Nagrabski, 71 N.J. Eq. 621,
the change was adjudged to be perfected though the certificate or policy was not delivered with the request for change of beneficiary in the lifetime of the insured, through no fault of the insured; and so in Supreme Conclave, Royal Adelphia v.Cappella, supra; Marboza v. Conselho, 43 Cal.App. 775;185 Pac. Rep. 1028; McDonald v. McDonald, 212 Ala. 137;102 So. Rep. 38.
 Sullivan v. Maroney, 76 N.J. Eq. 104, and Anderson v.Broad Street National Bank, 90 N.J. Eq. 78, relied upon by the defendant, are not in point. They involve assignments of policies, and assignment was held not to be the prescribed method for effecting a change of beneficiary.
In Prudential Insurance Co. v. Deyerberg, 101 N.J. Eq. 90,
the insured made a gift of his insurance; the insurance was payable to his estate, and the law of gifts was applied.
Judges differ as to the activity of the insured essential to bring the facts within the equitable rule, but it is the consensus of opinion, that upon the intent to make the change of beneficiary being reduced to writing, the documents must be promptly forwarded and any delay in dispatching or interruption in transit, contributing to non-delivery before death, is fatal. Misfortune in transit is no excuse; all available means to insure delivery before death must be adopted.
It is perfectly obvious that nothing could have been done by the sick Kish between the time he executed the change of beneficiary at three o'clock in the afternoon and early the next morning when he died, nor by Papp and his friends, or by Jacobs, to whom Kish gave the papers, to deliver the substitution and the certificate at the home office of the insurance company before death. Had they been mailed instanter, they would not have been delivered before Kish died early on New Year's Day; and that was a holiday. That they took them back to Roebling and later gave them to the employer *Page 528 
for transmission to the insurance company therefore becomes an immaterial incident.
The complainant, Papp, was entitled to recover $500 at most, if he could establish the debt, contracted, as he says, back in 1926, for it is plain that the transfer of the insurance was only a security.
The insurance company's legal obligation was to Getz, the beneficiary under the policy; Papp's claim, based on a valuable consideration, was purely equitable. An equity will not be enforced at the expense of a legal right. A legal right prevails over a pure equity. The insurance company has not waived its right to discharge its legal obligation to Getz — it is not interpleading — but it was not privileged to ignore Papp's equity if it could have acquitted itself with justice to both parties. The company afforded Papp every opportunity to establish his equity by judicial action against Getz, to the modification of the latter's legal right against the company. Getz stood four-square on the insurance contract, and the company could but recognize him as its creditor. It so advised Papp's attorneys, at the same time pressing them to sue, to convert his equity into a legal right to bar Getz pro tanto. This continued with the attorneys (one local, the other of New York) for over a year and a half and there was much correspondence. The company delayed Getz to help Papp. In June, 1930, it offered to negotiate with Getz, which was declined, but in November following the attorney requested it to deal with him, and it agreed to the extent of getting his consent to paying last illness and funeral expenses, but again cautioned them that if Getz refused, and he did, it would have no alternative but to pay him the insurance money. There was no response. Another letter followed in February, 1931, which the attorneys answered by enclosing proof of Papp's claim of $1,070. The company declined to recognize it or his claim under the policy and in a letter of March 13th, 1931, again expressed its intention to pay Getz the insurance, saying, however, that "ample time will be given your correspondent [local attorney] to take such action as he deems advisable to protect the interest of his client," and that "unless notice of legal action is received in this office *Page 529 
within one month from the date hereof, we shall feel at liberty to proceed with adjustment as explained" (pay Getz). To this there was a request to extend the time for an additional twenty days (a party in interest was sailing for Europe to negotiate with Getz). On June 17th the company asked to be advised of the developments and the answer was, progress. Under date of June 26th, Getz having, by letter, refused to make concessions, the company wrote: "In view of the statement, we must proceed with adjustment of his policy in accordance with the contractual obligation" but "in accordance with your request, however, we will defer taking such action in order to give you an opportunity to convey this information to your client. Please advise us promptly as we are desirous of settling this matter." The letter was ignored. In reply to a reminder letter of July 16th, the local attorney wrote, July 28th, that his "clients have not definitely decided just what course they wish to pursue. If you can hold the matter over until August 10th I will advise you definitely either that action to enforce the assignment has been decided on or that I have no further connection with the matter." To the present solicitor, who wrote August 10th, who wrote that it was his intention to bring action as soon as he could prepare the papers, the company answered, August 12th, that "payment of this claim will be deferred for a period not exceeding two weeks from the date of this letter. Unless notice of motion is served prior to that time we shall feel at liberty to effect settlement with our beneficiary." Not hearing anything more, the company paid Getz, September 29th. This bill was filed in December, 1931, and too late. Equity aids the vigilant, not those who slumber on their rights. The maxim functions not only in stale claim cases, but also where procrastination works injury. Slumber is not measured by the time elapsed but by the harm done; the Edison type may be as disastrous as the Van Winkle. The insurance company justly treated the complainant's silence and indifference as a waiver of his equity; as between its contractual obligation to Getz and the delayed equity of Papp, it had no alternative but to pay Getz. The complainant could have protected the company by timely effort to supervene *Page 530 
his equity by bill to compel the endorsement of the change of beneficiary on the policy or to issue to him a new one, as he now prays. The policy was in this state, and considered as the res, chancery had jurisdiction (Cameron v. Pennsylvania Mutual LifeInsurance Co., 111 N.J. Eq. 24, Vice-Chancellor Berry), and could have brought in Getz by substituted service (Morgan v.Mutual Benefit Life Insurance Co., 189 N.Y. 447;82 N.E. Rep. 438), and the insurance company, upon paying the money into court, would have been relieved. The predicament of the company called for prompt action by the complainant. Its liability to double responsibility imposed that duty. Despite constant importuning the complainant slept on. He is estopped. He would not move then and equity will not move now. He refused to do equity and equity refuses him.
The complainant's insistence that the insurance company could have relieved itself of responsibility by interpleading Getz and Papp is untenable. Its obligation to Getz was a promise to pay; the relation was one of debtor and creditor, and the debt was recoverable in any jurisdiction where the insurance company could be "found." His cause being in personam, Getz could be interpleaded by personal service only. His action in personam
could not be turned into one in rem by the company paying the money into court. Neither Getz nor Papp had a claim upon any definite moneys of the company, and the company could not, by segregating cash, paying it into court, and labeling it as theirs, transpose the personal promise into a res with asitus in this state, to obtain jurisdiction by publication. Personal service was imperative. A decree of interpleader against Getz would have been a nullity. Redzina v. ProvidentInstitution for Savings, 96 N.J. Eq. 346; Lanning v. Twining,71 N.J. Eq. 573; McBride v. Garland, 89 N.J. Eq. 314; Hills v.Aetna Life Insurance Co., 39 N.J.L.J. 132; Gleason v. NorthWestern Mutual Life Insurance Co., 97 N.J. Eq. 35; Hinton v.Penn Mutual Life Insurance Co., 126 N.C. 18; 35 S.E. Rep. 182;Dexter v. Lichliter, 24 D.C. App. 222; Gary v. N.W. MasonicAid Association, 87 Iowa 25; 50 N.W. Rep. 27.
The bill will be dismissed. *Page 531