## WOOD & SELICK, INCORPORATED, RESPONDENT, v. AMERICAN GROCERY COMPANY, APPELLANT.

Submitted March 21, 1921—Decided June 20, 1921.

1. A single sale by a foreign corporation in this state in the course of which it accepts a guarantee of payment herein, does not bring the transaction within the statutory prohibition of "doing business" here.

2. When an order is signed by the vendee in this state and then transmitted to the foreign corporation in another state, for acceptance or rejection, and is there accepted, the contract by such act is consummated in the foreign state.

3. In a suit upon a contract which contained a clause providing for arbitration in case of dispute, there was evidence that the plaintiff by letters to defendant, offered to arbitrate before suit was commenced, but the offer was ignored by defendant. *Held*, that it was properly left to the jury to determine whether defendant had in fact, by its silence and indifference, waived that provision and made it impossible of application.

4. The Sales act warrants the awarding of damage for storage charges and other charges reasonably incident to protecting the goods during the interim between the buyer's refusal to receive them and their resale.

On appeal from the Supreme Court, Hudson Circuit.

For the appellant, *Gross & Gross*.

For the respondent, *Francis A. Castellano, Jr.*

The opinion of the court was delivered by

MINTURN, J.   The defendant, a New Jersey corporation, having contracted in writing to purchase from plaintiff, a Maine corporation, a quantity of raisins, refused to accept delivery of same when offered, and having refused to pay for the merchandise, this suit was entered against it to recover the difference in value between the contract price and the sum realized by plaintiff upon a resale thereof in open market.

The difference in value was proved to be $2,590, plus storage charges made necessary in the interim between the date of the refusal to accept delivery, and the date of sale of the merchandise, interest upon the defendant's purchase price, and incidental commissions to the broker who had negotiated the sale. The jury found the damages to be as alleged and hence this appeal.

The defence was based upon matters *dehors* the contract and alleged trial errors resolving themselves into four alleged grounds of error. The preliminary inquiry is instituted for the purpose of contesting the plaintiff's legal status as a legal suitor, in that it is a foreign corporation, alleged to be doing business in this state, without complying with the requisites of our Corporation act. We have held that a single

sale by a foreign corporation in this state in the course of which it accepts a guarantee of payment herein, does not bring the transaction within the statutory prohibition of "doing business" here. *D. & H. Canal Co.* v. *Mahlenbrock*, 63 *N. J. L.* 281.

It is distinctly in evidence that the contract was in fact not executed in this state. The testimony presents a situation where plaintiff maintained a traveling salesman, who negotiated contracts of sale of its products, which sales were either accepted, confirmed or rejected by agents in New York State. A contract is complete in legal contemplation upon acceptance and delivery to the principal. 6 *R. C. L.* 642, and cases cited; *Hill* v. *Beach*, 12 *N. J. Eq.* 31; *Bell Telephone Co.* v. *Galen Hall*, 77 *N. J. L.* 253.

In harmony with this basic doctrine are the adjudications in this state that when an order is signed by the vendee in this state, and then transmitted to the foreign corporation in another state, for acceptance or rejection, and is there accepted, the contract by such act is consummated in the foreign state. *Slaytor Jennings Co.* v. *Paper Box Co.*, 69 *N. J. L.* 214; *Faxon* v. *Lovett Co.*, 60 *Id.* 128; *Bell Telephone Co.* v. *Galen Hall, supra; Low* v. *Davy*, 83 *N. J. L.* 510; *Falaenau* v. *Reliance Steel Foundry Co.*, 74 *N. J. Eq.* 325.

The fact that plaintiff's trucks made the deliveries of the goods in this state, in accordance with contracts executed elsewhere, of course becomes a negligible factor under the interstate commerce provisions of the federal constitution. *Robbins* v. *Shelby County Tax District*, 120 *U. S.* 489.

The next point of attack was upon the plaintiff's alleged failure to consent to arbitration as required by the provisions of the contract. The plaintiff's contention was that the plaintiff by letter to defendant offered to arbitrate before suit was commenced, but the offer was ignored, and it was conspicuously in evidence that the defendant itself never offered to arbitrate or to recognize this contractual provision as a basis of settlement.

The trial court therefore properly left it to the jury to determine whether defendant had in fact by its silence and

indifference, waived that provision and made it impossible of application, thus leaving a suit at law as the sole alternative for the determination of the plaintiff's claim. Whether or not suit was commenced before the plaintiff made its offer to arbitrate was properly left to the jury. The date of the summons issued is not conclusive as to that fact, since the sheriff may not have received it until after the proposal for arbitration had been submitted. The circumstances under which the defendant refused to accept the delivery of the merchandise were in evidence, and the trial court properly left to the jury the substantial inquiry whether in failing or refusing to accept delivery of the goods as tendered to its agent, the defendant had in fact abandoned its contract obligation. The delivery of the goods having been refused, plaintiff found it necessary to store them until a reasonably profitable market would present itself for their sale; and the trial court charged the jury that such reasonable expense which plaintiff might incur in that regard might be included in their verdict.

The measure of damages provided under the Sale of Goods act (*Comp. Stat., p.* 4662) which in essence is a statutory statement of the common law rule is, "the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract; and where there is an available market for the goods in question the measure of damage is, in the absence of special circumstances, showing approximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted." (*Section* 64.) Upon the main question of damages the charge of the trial court was in consonance with this statutory rule.

Upon the question of the defendant's liability for storage and other charges resulting from the defendant's failure to accept delivery, the charge of the learned trial court was in conformity with the fifty-first section of the act (*Comp. Stat., p.* 4659), which renders the defendant in the exigency here presented, liable "for any loss occasioned by his neglect

or refusal to take delivery, and also for a reasonable charge for the care and custody of the goods." The provisions of this section were made applicable by the defendant's refusal to accept delivery and the resulting right of the plaintiff to make a resale of the goods in a condition as nearly akin as possible to the condition of the goods at the time delivery was attempted. This was a reasonable precaution of which the defendant cannot complain, since its manifest purpose and tendency was to reduce the damages resulting from a possible deterioration of the goods pending their resale. This section of the act, it is to be observed, is to be read in conjunction with the seventieth section (*Comp. Stat., p.* 4664) which provides that buyer or seller may "recover interest or special damages, in any case, where by law interest or special damages may be recoverable." These sections are not disjointed provisions of the act, but must be construed *in pari materia,* thus constituting a harmonious enactment to prevent and avoid injustice. *Trapp* v. *Brown,* 91 *N. J. L.* 481. Nor is this statute intended as a legislative endeavor to present in its entirety a substitute for the law merchant, or the rules of damage applicable under the common law in civil actions, excepting where its provisions clearly conflict therewith. This is made manifest by the seventy-third section of the act (*Comp. Stat., p.* 4664), which provides "in any case not provided for in this act the rules of law and equity, including the law merchant * * * shall continue to apply to contracts to sell and to sales of goods." At common law the rule of compensatory damage extended to those items resulting from special circumstances and which could be reasonably estimated as the proximate consequence of the breach. *Hadley* v. *Baxendale,* 9 *Exch.* 341; 8 *R. C. L.* 455 and cases cited.

We consider that the statutory enactments referred to warranted the application of the rule of damage as to storage and other charges reasonably incident to protecting the goods during the interim between the defendant's refusal to receive them, and their resale, and that in this respect the charge of the learned trial court was correct.

The remaining exceptions discussed in the briefs are fully determined by this disposition of the case, and for the reasons stated we find no error in the action of the trial court, either in the refusal to nonsuit or to direct a verdict, or in the court's refusal to charge the requests submitted.

The judgment will be affirmed.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 14.

*For reversal* — None.