PRUDENTIAL INSURANCE COMPANY OF AMERICA, complainant,

*v.*

HARDY SWANSON, defendant-respondent; MILDRED SWANSON, defendant-appellant.

[Submitted May term, 1932. Decided October 17th, 1932.]

478

*Messrs. Lindabury, Depue & Faulks,* for the complainant.

*Messrs. Grosso, Brundage & Anderson,* for the defendant-respondent.

*Mr. Paula Laddey,* for the defendant-appellant.

The opinion of the court was delivered by

WELLS, J.

The complainant, a life insurance company, filed a bill of interpleader against the defendants to determine which of them was entitled to receive the proceeds of an insurance policy issued by the complainant upon the life of one Oscar E. Swanson.

The proceeds are in court. The facts are for the most part either stipulated or not in controversy.

On June 4th, 1928, the Prudential Insurance Company, at the instance of Oscar E. Swanson, issued to him a policy in which it promised to pay to the insured, if living twenty years after the date thereof, or in case of the prior death of the insured, to Mildred Swanson, beneficiary, wife of the insured, the sum of $1,000.

The policy, by its terms, reserved to the insured the right to change the beneficiary, and the method whereby the beneficiary under said policy might be changed was stated in the policy as follows:

"Change of Beneficiary.—If the right to change the Beneficiary has been reserved the Insured may at any time while this Policy is in force, by written notice to the Company at its Home Office, change the Beneficiary or Beneficiaries under this Policy, such change to be subject to the rights of any previous assignee and to become effective only when a provision to that effect is endorsed on or attached to the Policy by the Company whereupon all rights of the former Beneficiary or Beneficiaries shall cease."

The policy also contained the following provision relative to its assignment:

"Assignments—Any assignment of this Policy must be in writing, and the Company shall not be deemed to have knowledge of such assignment unless the original or a duplicate thereof is filed at the Home Office of the Company. The Company will not assume any responsibility for the validity of an assignment."

For about a year prior to his death Oscar E. Swanson and his wife had not lived together. About one month before he died he went to the City Hospital and while there he signed the following paper:

"For And In Consideration of the sum of One Dollar and other valuable consideration to me in hand paid, the receipt whereof is hereby acknowledged, I do hereby assign, transfer and set over unto Hardy Swanson, all of my right, title and interest in and to a certain life insurance policy on my life, made by the Prudential Insurance Company of America, in the amount of $1,000 and I do hereby authorize and constitute the said Prudential Insurance Company of America to change the name of the beneficiary of the said policy from Mildred Swanson to Hardy Swanson.

In Witness Whereof, I have hereunto set my hand and seal this 14th day of July, 1930.

OSCAR E. SWANSON (L. S.)

Signed, Sealed and Delivered
 in the presence of:
 RUTH E. JACKSON."

At the same time he also signed a letter which was dated July 15th, 1930, addressed to the complainant, as follows:

"Gentlemen :

Some time ago, I took out, thru your Roseville Branch, a policy on my life in the amount of $1,000, naming my wife, Mildred Swanson, beneficiary. I have not been living with my wife for almost a year and do not wish to have her continue as the beneficiary of the policy.

I am enclosing herewith an Assignment assigning my right, title and interest in the policy and naming my brother, Hardy Swanson, as beneficiary thereof in the event of my death. I am handling the matter in this way for the reason that my wife will not give up the policy.

Will you kindly change your records accordingly and advise me that it has been done. Thanking you, I am,

Yours respectfully,

OSCAR E. SWANSON."

Both the assignment and the letter were prepared by Ruth E. Jackson, a friend, and signed at the hospital by Oscar E. Swanson, in the presence of Miss Jackson's brother-in-law and the Rev. F. Wahlborg, the minister of Oscar E. Swanson's church. On July 15th, 1930, at Swanson's request, Pastor Wahlborg took the letter and the assignment, without, however, the insurance policy, to the home office of complainant in Newark, expressing the purpose of his call to an employe at the home office, who directed him to take the papers to the Roseville branch office of complainant in Newark, which he did, and left the same on July 15th, 1930, at that office.

Oscar E. Swanson died on July 17th, 1930. The policy at the time the papers were executed and for about a year before insured's death, was in the possession or under the control of appellant, Mildred Swanson.

No provision as to the proposed change of beneficiary was endorsed on or attached to the policy by the complainant.

The only question for solution herein is whether a change of beneficiary was effected.

The respondent, Hardy Swanson, claims that Oscar E. Swanson complied with all the requirements of the policy for effecting a change of beneficiary, so far as lay within his power, and, hence, the doctrine that equity regards that done which ought to be done is applicable and that the respondent, Hardy Swanson, is, therefore, entitled to the proceeds of the policy.

The vice-chancellor decided that the brother, Hardy Swanson, was entitled to the insurance money and found that Oscar E. Swanson did everything, under the circumstances, that he could have done to comply with the requirements of the policy respecting the change of beneficiary; that the notice was sufficient, and that while it was true that the policy was not delivered to the insurance company for endorsement of change of beneficiary, it was in the hands of an adverse claimant, the wife of the insured, and that the insured was, therefore, unable to get it for the purpose of delivery. He applied the legal principle that where it is impossible to deliver the policy to the insurance company for endorsement of change of beneficiary because it is held by an adverse claimant, such delivery is not necessary.

With this legal principle we have no quarrel.

"It is uniformly held that where insured's failure to complete a change of beneficiary in his policy, before his death, by a return of the policy to the insurer, was caused by a refusal of the beneficiary named therein to surrender the policy to him, his efforts, if otherwise in substantial compliance with the requirements imposed by statute or contract, will at least, as between the persons claiming as beneficiaries be given effect, and the equitable right of the person designated by him as the new beneficiary will prevail over the strict legal title appearing on the face of the policy." *36 A. L. R. 771.*

Counsel for Hardy Swanson, respondent, cites in support of his claim, paragraph 350 of *37 Corp. Jur.,* as follows:

"On the principle that equity regards as done that which ought to be done, the court will give effect to the intention of the insured by holding that the change of beneficiary has been accomplished where he has done all that he could to comply with the provisions of the policy, as where he sent a proper written notice or request to the home office of the company but was unable to send the policy by reason of circumstances beyond his control, as where it has been lost, or was in the possession of another person who refused to surrender it, or was otherwise inaccessible, &c."

With this declaration we are also in accord.

The reports of the decisions of the courts of the various states are filled with learned opinions by eminent jurists on the subject and no useful purpose can be served by reviewing them. It is sufficient to say that this court and the court of chancery of our state have repeatedly said that:

"As a general rule, the interest of an individual designated as beneficiary in a policy of insurance is a *vested property right,* payable to him if he outlives the insured, which right can only be divested by the insured making a change in beneficiary in the manner provided by the policy contract. Consequently, an assignment of such policy by·the insured, even if made in full compliance with terms similar to those contained in the policy now under consideration, is ineffectual as against such beneficiary. *Metropolitan Insurance Co.* v. *Clanton, 76 N. J. Eq. 4; Sullivan* v. *Maroney, 76 N. J. Eq. 104; affirmed, 77 N. J. Eq. 565; Anderson* v. *Broad Street National Bank, 90 N. J. Eq. 78; affirmed, 91 N. J. Eq. 331; Metropolitan Life Insurance Co.* v. *Tesauro, 94 N. J. Eq. 637."*

A mere unexecuted intention to change the beneficiary is not sufficient.

The persons originally indicated as the beneficiary in life insurance policies have the right to insist upon a compliance with their terms.

This general rule requiring the change of beneficiary to be made in the manner pointed out by the policy is subject to some exceptions. Vice-Chancellor Leaming, whose opinions have been so often admired and affirmed by this court, pointed out, in the case of *Prudential Insurance Co.* v. *Reid, 107 N. J. Eq. 338,* one exception.

In the *Reid Case* the insured sent the policy to the insurer, with a proper request for the change of beneficiary and the vice-chancellor, referring to that class of cases where no discretion as to who shall be beneficiaries is reserved to the insurer, said (citing cases) :

"In cases of the latter class the endorsement on the policy is, I think, uniformly and properly regarded as a mere minis-

terial act, where the insured has done all that he should have done to entitle him to have the endorsement made on the policy.

"This is necessarily so, since the absence of any reservation of a discretionary right on the part of the insurer in the matter of change of beneficiaries must give to the insured an unrestricted right, so far as the insurer is concerned. And if it be here determined that the insurer should have made the endorsement on the policy, equity must regard that which should have been done as having been done, and the rights of the respective parties in interest will be measured without regard to the absence of the ministerial act of endorsement."

The vice-chancellor in the case *sub judice*, as appears in remarks made before delivering his conclusions, decided the instant case on the authority of the *Reid Case*, and counsel for respondent argues in his brief forcefully that it is directly applicable and dispositive of the instant case.

We find a marked distinction between the two cases.

In the *Reid Case* the demand was accompanied by the policy and everything was done by the insured that was required of him to be done in order to change the beneficiary.

It was the insurer which failed to do its plain duty by endorsing the change on the policy.

An examination of cases will show that for the most part the insured is excused from complying with the strict requirements of his policy only where he is able to convince the court that he has done everything within his power to effect a change and made every reasonable effort to comply with the conditions of a change of beneficiary and that then the rule that substantial compliance is sufficient becomes applicable.

The question then to be answered is—did Oscar E. Swanson measure up to these requirements?

Did he make every reasonable effort to obtain the policy and deliver it to the complainant insurer, in order that the provision as to the change might be endorsed thereon or attached thereto by the insurer?

The court below answered that question in the affirmative

and if that answer be justified by the evidence in the case, the decree below should be affirmed.

Counsel for Hardy Swanson argued before the vice-chancellor that it was immaterial whether any application had been made to the wife for the policy, "but that if it was material to show whether or not the policy was demanded they were prepared to prove that it was."

To this the vice-chancellor replied: "I wouldn't think it was, but if either of you think it is, you may submit testimony on that point."

We think that under the peculiar circumstances of this case it was necessary to show that the insured had made an effort to obtain the policy from his wife, or to produce proof beyond the fact that they were not living together, to warrant an inference that the policy was in the hands of an adverse claimant and that the insured was, therefore, unable to obtain it.

The only testimony submitted tending to show a demand for the policy comes from Hardy Swanson, who, to say the least, is not a disinterested witness. He says that in the month of September, 1929 (ten months before the letter was written by Oscar E. Swanson to the insurance company asking that the beneficiary be changed), he (Hardy Swanson), asked Mr. and Mrs. Carlson, the parents of appellant (to whom insured had entrusted the policy for safekeeping), in the presence of appellant, for the policy and that they declined to deliver it to him, stating that the insured had it. The Carlsons and Mrs. Swanson emphatically deny this and they deny that any demand or request for the policy was ever made at any time by anyone.

Hardy Swanson admits that he never asked for the policy after September, 1929. He said that he was asked by the insured to request the return of the policy, but his testimony clearly shows that he did not disclose to the parents of Mildred Swanson or to Mildred Swanson that he came at the request of, or had been sent by Oscar E. Swanson for the policy. There was, of course, no reason why the policy should have been delivered to Hardy Swanson under these circum-

stances. Oscar E. Swanson was living within a short distance of his wife and she was accessible. He was physically able to personally demand or write for the policy had he wanted it.

The undisputed evidence is that on July 15th, 1930, the day when the letter of the Prudential Insurance Company was dated, and the letter and so-called assignment were delivered, Mildred Swanson called upon her husband at the hospital, and that Hardy Swanson and the Rev. Wahlborg, the messenger who, on that very day, delivered the letter to the Prudential Insurance Company, were present during the entire time of Mildred Swanson's visit with her husband, and that Oscar E. Swanson, the husband, made no demand for or mention of the insurance policy. No explanation is made why, if he wanted the policy, he failed to ask his wife for it on that occasion.

There is not a scintilla of evidence in the case, other than that which is contained in the letter of July 15th, 1930, that Oscar E. Swanson ever made any effort whatever to obtain the policy from his wife, nor is there any testimony indicating that if such a demand had been made it would not have been complied with.

After a careful examination of the evidence in this case, and the decisions of this court applicable thereto, we are not convinced, as was the vice-chancellor, that Oscar E. Swanson did everything under the circumstances that he could or should have done to comply with the requirements of the policy respecting the change of the beneficiary.

We are of the opinion, therefore, that the decree of the court of chancery holding that a change of beneficiary from the wife, Mildred Swanson, to the brother, Hardy Swanson, had been accomplished was erroneous and should be reversed.

*For affirmance*—DONGES, VAN BUSKIRK, KERNEY, JJ. 3.

*For reversal*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, BROGAN, KAYS, DEAR, WELLS, JJ. 10.