ANNA K. DAVID, PLAINTIFF-APPELLANT, v. METROPOLITAN LIFE INSURANCE COMPANY, DEFENDANT-RESPONDENT.

Submitted May 31, 1946—Decided January 7, 1947.

Before Case, Chief Justice, and Justices Heher and Colie.

For the appellant, *Koestler & Koestler* (*Melvin J. Koestler*, of counsel).

For the respondent, *Vincent D. Manahan, Jr.*

The opinion of the court was delivered by

Heher, J. The question here is whether one who procures a policy of insurance upon his own life, and pays the premiums thereon, may, without the consent of the beneficiary, whose appointment as such is revocable, receive "loans" from the insurer under a provision of the policy obliging the insurer, at any time after three full years' premiums have been paid and while the policy is in force, "on proper and lawful assignment and delivery" of the policy, to "loan on the sole security thereof up to the limit secured by the cash surrender value."

The defendant insurer issued to the late Judge Abe J. David three policies of insurance upon his life: the first on

May 22d, 1912, in the sum of $5,000; the second on November 24th, 1919, in the sum of $10,000; and the third on June 27th, 1921, in the sum of $6,000. His wife, the plaintiff herein, was designated as the beneficiary of all three policies; but the insured reserved the absolute power of revocation and the right to designate a new beneficiary, with or without a reservation of the right of revocation. All payments of premiums upon the policies were made by the insured; and he had exclusive possession of the policies at all times. There was neither a change of beneficiary nor a revocation of the appointments thus made. The insurer made a series of "loans" to the insured upon each of the policies; and in each instance the insured executed an assignment to the insurer of "all right, title and interest in" the particular policy, "together with all money that may become payable thereunder, as sole security for" the loan, so termed, which bore interest at the rate prescribed by the policy, and stipulated for the avoidance of the policy in the event that the principal of the loan and the accrued interest should equal the policy's cash surrender value. On January 25th, 1940, on the application of the insured, the face amount of the second policy was reduced from $10,000 to $5,000, and credit was given accordingly on an outstanding "loan" made thereunder. Eventually, each policy lapsed for non-payment of a matured premium: the first above mentioned on May 22d, 1939; the second on November 24th, 1940; and the third on June 27th, 1938. The first and second policies were continued as paid-up insurance for $326 and $244, respectively; but the unpaid loan on the third policy equalled its cash surrender value, and so it was deemed valueless. The insured died on November 21st, 1942; and it is conceded that the beneficiary not only did not consent either to the making of the loans in question or to the reduction of the amount of the one policy, but had no knowledge of any of those transactions until after the insured's death.

The beneficiary sued for the face amount of the three policies; and Judge McGrath, sitting in the Pleas without a jury, by consent, rendered judgment for plaintiff for what the defendant insurer contends is the paid-up insurance

value of the first and second policies, and for defendant on the third policy.

The point made by the beneficiary, in brief, is that as such she had a "vested property right" in the policies which was subject to divestment "only in the manner provided by the policy contract;" that the assignments made by the insured to the insurer served only to transfer the insured's interest in the policies, *i. e.,* the insured's right to the proceeds of the policies if he survived the beneficiary, and therefore the beneficiary is not bound by the insured's assignments of the policies to secure the loans made thereon—citing *Sullivan* v. *Maroney,* 76 *N. J. Eq.* 104; *affirmed,* 77 *Id.* 565, and *Anderson* v. *Broad Street National Bank,* 90 *Id.* 78; *affirmed,* 91 *Id.* 331.

A life insurance policy such as this is a contract between the insurer and the insured; and it is to be construed and enforced according to the common intention of the parties expressed in the writing and the provisions incorporated therein by force of statute law, which latter ordinarily also derive their efficacy from the consent of the parties, as evidenced by their acceptance of the contract as so conditioned. And the interest of the appointed beneficiary arises out of the contract of insurance, and is perforce measured by its terms. It is a corollary that, generally, the insurer may make loans to the insured on the security of the policy, or the insurer and the insured may cancel the contract, unless the rights of a third party would be thereby invaded; and this is not the case as to a donee beneficiary whose appointment is subject to revocation by the insured. Such a beneficiary's interest is subject to the rights of the contracting parties *inter se;* and where, as here, the donee beneficiary's appointment is revocable at the instance of the insured, and there is no provision *contra,* the insured may exercise, without the consent of the beneficiary, the power reserved to him to demand and receive from the insurer the cash surrender value of the insurance, and thus effect a cancellation of the policy, or "loans" upon the security of the policy within the cash surrender value. This is so whether the interest of the donee beneficiary be termed a vested defeasible right, payable if he

survives the insured, and divestible only by a change of beneficiary in the mode and manner prescribed by the contract, or a mere expectancy that does not ripen into a vested and absolute right until the death of the insured without a change of beneficiary. *Vide Metropolitan Life Insurance Co.* v. *Woolf,* 138 *N. J. Eq.* 450. In such circumstance, the interest of the beneficiary is subordinate to the insured's reserved absolute right to receive the cash surrender value, and thus to terminate the contract, or to have "loans" from the insurer on the security of the policy within the limit of the cash surrender value, with the right of repayment, at the prescribed rate of interest, and in this wise to restore the diminished insurance. Such is not a loan in the strict technical sense, for there is no obligation of repayment on the insured, but rather an advancement on the cash value of the policy, the repayment of which will reinstate the depleted insurance without the issuance of a new policy and the submission of evidence of insurability. A "loan" by the insurer in such circumstances does not give rise to the relationship of debtor and creditor.

Here, the insurer in each instance contracted to pay to the designated beneficiary the stipulated amount of insurance, "less any indebtedness hereon" to the insurer. And, in the event of a "lapse" after three full years' premiums shall have been paid, the "owner" of the policy, at his option, became entitled to the cash or reserve value thereof, or non-participating paid-up or term insurance. The policy contained a table of "Guaranteed Loan Values and Surrender Options." This is a peremptory requirement of the statute. *R. S.* 17:34–15. This section also enjoins the insertion in such a policy of a provision that it "shall participate in the surplus of the company, and that * * * the owner of the policy shall have the right to have the dividend arising from the participation paid in cash at the end of the then current policy year," and also a clause which, "in event of default in premium payments after premiums have been paid for three years, shall secure to the owner of the policy a stipulated form of insurance, the net value of which shall be at least equal to the entire reserve held by the company on the policy, * * *

including dividend additions thereto, if any, and less any outstanding indebtedness to the company on the policy." And the policy provided, under the authority of the statute, that "any indebtedness to the company" thereunder shall be deductible from its cash value, and shall also reduce the amount of the paid-up and term insurance "in such proportion as the indebtedness bears to the cash value at due date of premium in default."

To hold that such contractual incidents of loan value and cash surrender value are available to the insured only with the consent of the donee beneficiary would be to distort the plain letter and spirit of the contract. It would set at naught the essence of the contractual scheme. A policy of this class constitutes, through the insured's savings thus invested and the earnings thereon, a measure of economic security for the insured during his life, and for the beneficiary (in this case, and usually, a dependent) after his death, to the extent of whatever value it may then have, if any; and the construction advanced by appellant would frustrate the first of these objectives and render the contract one for the exclusive benefit of the beneficiary, even though the absolute right to change the beneficiary was reserved to the insured and, in the exercise of the power thus retained, he could at any time have made provision for the payment of the proceeds to his own estate or his legal or personal representatives. See, in this connection, *Merchants' and Miners' Transportation Co.* v. *Borland*, 53 N. J. Eq. 282. The insured was the "owner" of the policies under review within the intendment of the cited provisions of the statute and the policies themselves. That term has reference to the person who at the particular time has an interest in the contract of insurance as distinguished from the proceeds. *Edenfield* v. *Metropolitan Life Insurance Co.*, 98 N. J. L. 187; *Kelly* v. *New England Mutual Life Insurance Co.*, 32 Fed. Rep. (2d) 611.

We have no occasion to consider the quality of a contract of this general class where the appointment of the beneficiary is irrevocable.

The judgment is affirmed.