**CONTINENTAL ASSUR. CO. v. CONROY et al.**

**Civ. A. 601–51.**

United States District Court
D. New Jersey.
March 31, 1953.

Term Insurance Policy in the face amount of $25,000 to John S. Conroy, payable to the estate of the insured, a copy of which is attached to the complaint.

The complaint alleges that the insured died on or about March 30, 1951, and that the proceeds of the insurance policy became due and payable. Members of the insured's family and certain of his creditors have asserted claims to the proceeds, basing their claims on one or more of the changes of beneficiaries, assignments or declaration of trust made by the insured. The insurer, the plaintiff, also claimed an interest in the proceeds, asserting that on or about August 16, 1946, the insured, under a Policy Loan Agreement, borrowed $2,625 from it, assigning the policy to it as security for the loan and that at the time of the filing of the complaint there was due on the policy the sum of $1,742.12, less a refund of loan interest in the sum of $27.04, leaving a balance due the plaintiff of $1,715.08.

The plaintiff paid into the Registry of the Court the sum of $25,000 and named as defendants in the suit all persons mentioned in the changes of beneficiaries, assignments and declaration of trust who may have an interest in the proceeds of the insurance policy.

No objections were raised in the answers to the claim of The Continental Assurance Company. After a hearing the court ordered that the defendants should not institute or prosecute any proceedings in any other court affecting the property involved in this interpleader action. The plaintiff was discharged from all liability in the cause and was awarded the sum of $2,000 out of the money paid into court as its allowance for its costs, expenses and attorney's fees. In addition the plaintiff was adjudged to be entitled to the refund of the sum of $1,715.08 out of the fund, that being the money due it under the Policy Loan Agreement of August 16, 1946.

The various changes of beneficiaries, assignments of the policy and declaration of trust were executed between July 12, 1929, and January 28, 1950, as recorded in the following table:

Louis B. LeDuc, Camden, N. J., for cross-claimants Natalie Leona Conroy, Lois Anne Conroy, Robert Conroy and Asa M. Stackhouse, for the motion.

William Reich, Trenton, N. J., for defendant Rebecca Neidich, contra.

Alexander Denbo, Burlington, N. J., for defendants Mr. R. G. Dunn, Estate of Mrs. Emily Taggart, Estate of James Murphy, Ernest Sutton, Alice McCune, Charles Moses and Samuel Lippincott, contra.

James M. Davis, Jr., Mt. Holly, N. J., for defendant John S. Conroy, 3rd.

FORMAN, Chief Judge.

I

Plaintiff, The Continental Assurance Company, a corporation of Illinois, authorized to do business in New Jersey, instituted this action of interpleader under 28 U.S.C. §§ 1335, 1397, 2361. The complaint alleges that on or about July 12, 1929, the plaintiff issued a Twenty-Seven Year Convertible

| Date Applied | Action | Change Effected | Date of Acceptance | Change of Beneficiary Reserved |
|---|---|---|---|---|
| | Issuance of policy | Estate of Insured | July 12, 1929 | Yes |
| Aug. 29, 1929 | Change of Beneficiary | Leona, John S., 3rd, Robert and Lois Anne Conroy made beneficiaries. | Sept. 1, 1929 | No |
| Aug. 23, 1929 | Change of Beneficiary | George Neidick, creditor, added to list of beneficiaries. | Dec. 9, 1929 | No |
| Jan. 6, 1930 | Change of Beneficiary | Estate of insured made sole beneficiary. | Jan. 21, 1930 | No |
| Aug. 22, 1937 | Change of Beneficiary | Leona, John S., 3rd, Robert and Lois Anne Conroy made beneficiaries. | Aug. 27, 1937 | Yes |
| Dec. 27, 1937 | Change of Beneficiary | John S., 3rd, Robert and Lois made beneficiaries. | — | Yes |
| Jan. 6, 1938 | Collateral assignment | Howard Eastwood, assignee | — | — |
| Jan. 6, 1938 | Change of Beneficiary | John S., 3rd, Robert, Lois Anne Conroy made beneficiaries in new proportions. | — | Yes |
| Mar. 2, 1938 | Change of Beneficiary | Estate of insured, 14 friends, John S., 3rd, Lois Anne, and Robert Conroy named beneficiaries. | Mar. 2, 1938 | Yes |
| Mar. 29, 1938 | Assignment | To First Nat. Bank & Trust Co. of Beverly and Howard Eastwood. | — | — |
| Apr. 7, 1938 | Change of Beneficiary | Same persons named beneficiaries as above assignees. | April 11, 1938 | Yes |
| Apr. 18, 1938 | Declaration of Trust | Settler's family, employees and creditors made beneficiaries of trust. | — | — |
| Jul. 24, 1939 | Change of Beneficiary | Leona Force Conroy named beneficiary. | Sept. 20, 1939 | Yes |
| Aug. 16, 1946 | Policy Loan | Insured borrowed $2,625 on policy. | — | — |
| | Change of Beneficiary | Creditors, John S., 3rd, and Robert T. Conroy made beneficiaries. | Aug. 11, 1947 | .? |
| Oct. 13, 1948 | Change of Beneficiary | Creditors, Charities, and John S. Conroy, III, named as beneficiaries with contingencies. | — | Yes |
| Oct. 21, 1948 | Change of Beneficiary | Creditors, charities, and John S. Conroy, III, named as beneficiaries with contingencies. | Oct. 26, 1948 | Yes |
| Jan. 28, 1950 | Change of Beneficiary | Creditors and John S. Conroy, III, named as beneficiaries with contingencies. | Jan. 30, 1950 | Yes |

Elaborating in greater detail, on March 29, 1938, the insured executed an assignment of his policy to the First National Bank and Trust Company of Beverly, New Jersey, and Howard Eastwood, and on April 7, 1938, the insured made application to the plaintiff for a change of beneficiary, revoking all former designations under the policy and changing the beneficiary to the above named bank and Howard Eastwood, co-trustees under a trust agreement.[1] On or about April 18, 1938, the insured executed a declaration of trust in which he mentioned the assignment to the trustees and provided that the assignees, out of the proceeds of the life insurance policy, pay certain sums to designated persons, pay certain obligations of the insured and after making such payments hold the balance in trust paying the income therefrom to the insured's widow, Natalie Leona Conroy, for life or so long as she remained unmarried. Upon her death or remarriage the entire fund was to go to the insured's children, John S. Conroy, 3rd, Robert Conroy and Lois Anne Conroy in proportions set forth in the declaration of trust.

On July 24, 1939, the insured made application to the plaintiff for a change of beneficiary to Leona Force Conway, another way of designating the wife of the insured. An indorsement on the policy indicates that prior to August 11, 1947, the insured applied to have certain creditors and his sons, John S., 3rd and Robert T. Conroy made beneficiaries.

On October 13, 1948, the insured applied for a change of beneficiary, revoking all former designations and specifying that the proceeds of the policy be paid to certain creditors, if living, and the balance to his son, John S. Conroy, 3rd, if living. If this son predeceased the insured, his share was to be paid to certain others. A similar change of beneficiary inuring to the benefit of certain creditors and John S. Conroy, 3rd, was made on October 21, 1948, and on January 28, 1950.

Defendant Board of Trustees of Friends School answered and asserts that it had a claim of $280 against John S. Conroy and that it was named as a beneficiary in that amount in the application for change of beneficiary made by the insured on October 13, 1948, and on October 21, 1948, which later change is asserted to be still in force.

Defendant Rebecca Neidich answered and states that on March 15, 1933, the liquidator of the Burlington City Loan & Trust Company recovered a judgment against John S. Conroy for the sum of $2,611.08. This suit was upon a promissory note, for the payment of which John S. Conroy was primarily liable and George C. Neidich secondarily liable. For valuable consideration the Trust Company assigned the judgment to defendant Rebecca Neidich, who demanded payment of John S. Conroy. It was agreed between the two that Rebecca Neidich would accept in full satisfaction of the judgment the sum of $1,400 and in consideration thereof John S. Conroy would designate her as beneficiary of the proceeds of a life insurance policy to the extent of $1,400. On October 13, 1948, the insured designated this defendant a beneficiary in that amount, and she refrained from instituting proceedings to collect the debt.

By way of answer and amended answer Natalie Leona Conroy, the wife described in the complaint as Leona Force Conroy, Lois Anne and Robert Conroy assert as a first cross-claim that the designation of them and of John S. Conroy, 3rd, as beneficiaries of the insured made by the change of beneficiary executed August 29, 1929, was made without reservation of the power to change beneficiaries and therefore gave these beneficiaries a vested and indefeasible right to the proceeds of the policy, unaffected either by subsequent attempted changes or by the assignment of the policy on March 29, 1938. In a second alternative cross-claim in which these three defendants were joined by Asa M. Stackhouse, a creditor of the insured, they assert that in the event that the court

1. This change of beneficiary refers to a "trust agreement dated March 29th, 1938". The trust agreement is dated April 18, 1938 so that it appears that the insured was referring to the assignment dated March 29, 1938.

should disallow the first cross-claim, the assignment in trust of the policy, dated March 29, 1938, gave the beneficiaries of the trust named in the trust indenture of April 18, 1938, vested and indefeasible rights to the proceeds of the policy, which rights were not affected by the subsequent attempted changes of beneficiary. In addition, these four defendants assert that all changes of beneficiary attempted by the insured subsequent to the designation as sole beneficiary of Natalie Leona Conroy on July 24, 1939, were invalid due to the mental incapacity of the insured and as having been induced by the undue influence and misrepresentations of his son John S. Conroy, 3rd. The third count, an alternative cross-claim of Natalie Leona Conroy, advances the theory that if the court disallows the first two cross-claims, the change of beneficiary of July 24, 1939, which designated her sole beneficiary was not affected by subsequently attempted changes for the reasons cited in the second cross-claim.

Five other defendants answered stating that they have no knowledge concerning the various changes of beneficiary, assignment of the policy and declaration of trust, but that they are owed sums as follows: James Murphy—$5,000; Ernest Sutton—$950; Alice McCune—$950; Elizabeth Dunn—$750; and Samuel Lippincott—$1,200. These defendants pray that their rights in the proceeds of the policy be adjudged. An amended answer was later filed by the estate of James Murphy suggesting his death.

In his answer John S. Conroy, 3rd admits the facts as alleged in the complaint and asserts that by virtue of the October 21, 1948 change of beneficiary he is entitled to all the proceeds of the policy after payment of the claims of the creditors named in that change of beneficiary.

Charles Moses answered and claims that he is owed $100 and prays that his rights in the proceeds of the policy be adjudged.

The First National Bank and Trust Company of Beverly, New Jersey, answered saying that it has no interest in the subject matter of the litigation other than the trust relationship noted in the complaint, which trust this defendant stands ready to perform in the event that the court upholds its legality. The other trustee answered to the effect that he has no interest in the subject matter of the litigation and that if the court should find that the assignment to the bank and to him was valid, he would not accept or execute the trust but would renounce it.

Defendants and cross-claimants Natalie Leona Conroy, Lois Anne Conroy, Robert Conroy and Asa M. Stackhouse moved for a summary judgment on the basis of grounds asserted in the first count of the cross-claim contained in their amended answer, or, in the alternative, on the basis of the second count. The third alternative claim of course would have to go to trial they concede. They relied upon the policy of insurance and the various documents and papers, copies of which are attached to the complaint, the authenticity of which was stipulated by counsel.

## II

No dispute arises as to the applicable law in this case. The policy provides that it shall take effect as of the 12th day of July, 1929, after delivery of the policy to the insured and the payment of the first premium. Nothing appears to indicate that these acts were not done in New Jersey, home of the insured. The New Jersey conflict of laws rule is that a contract is governed by the substantive law of the state wherein it was executed, Wood & Selick v. American Grocery Co., E. & A. 1921, 96 N.J.L. 218, 114 A. 756, and this rule is applied to contracts of insurance, Metropolitan Life Ins. Co. v. Lodzinski, E. & A. 1937, 122 N.J.Eq. 404, 194 A. 79.

The policy in question contains the following provisions respecting the insured's right to change his beneficiary:

"The Continental Assurance Company * * * hereby agrees to pay Twenty Five Thousand Dollars immediately upon receipt at its Home Office of due proof of the death, during the continuance of this policy and prior to the twelfth day of July, Nineteen Hundred and Fifty-Six, of John S. Conroy (hereinafter called the In-

sured), to The Estate of the Insured, (designated as Beneficiary with The right on the part of the Insured to change the Beneficiary) upon surrender of this policy properly released.

\* \* \* \* \* \*

"Change of Beneficiary—When the right to change the beneficiary has been reserved, or in the event of the death of any beneficiary, the Insured may designate a new beneficiary, with or without reserving the right of change, by filing written notice thereof at the Home Office of the Company, accompanied by this policy for suitable endorsement. The rights of such new beneficiary shall be subject to any existing assignment of this policy made as herein provided.

"If any beneficiary shall die before the Insured, and the Insured shall not have designated a new beneficiary, the proceeds of this policy or the share of the deceased beneficiary or beneficiaries, as the case may be, shall be payable to the estate of the Insured."

The contention is made by cross-claimants Natalie Leona Conroy, Robert and Lois Anne Conroy that the first change of beneficiary from the estate made on August 29, 1929, without specifically reserving the right to make future changes, gave them and John S. Conroy, 3rd vested rights to the proceeds of the policy upon the death of the insured, and that these rights remained unaffected by any of the numerous subsequent attempts by the insured to name other beneficiaries.

■■ It is clear that under New Jersey law a beneficiary of a life insurance policy takes a vested interest in the proceeds payable at the death of the insured, which interest is defeasible only to the extent provided in the policy, Metropolitan Life Ins. Co. v. Woolf, E. & A. 1946, 138 N.J. Eq. 450, 47 A.2d 340; Prudential Ins. Co. of America v. Swanson, E. & A. 1932, 111 N.J.Eq. 477, 162 A. 597. But it is also clear that the insured may reserve in his policy the right to affect the interest of the beneficiary, Phoenix Mut. Life Ins. Co. v. Connelly, 3 Cir., 1951, 188 F.2d 462 and that

the interest of the beneficiary arises out of the contract of insurance and is measured by its terms, see David v. Metropolitan Life Insurance Co., Sup.Ct.1947, 135 N.J.L. 106, 109, 50 A.2d 651, affirmed, E. & A. 1947, 136 N.J.L. 195, 54 A.2d 731.

In the case at hand the rights of the various beneficiaries depend upon the meaning of the insured's reservation of the right to change his beneficiary. There appears to be no New Jersey case interpreting language like that creating the difficulty here which provides that an insured may change his beneficiary with or without reserving the right of change. The cross-claimants cite two cases in which the insured reserved the right to change his beneficiary and which provided that when the right of revocation had been reserved, or in the case of the death of the beneficiary the insured could designate a new beneficiary, with or without reserving the right of revocation. In each case the court held that the insured reserved the right to change only his first beneficiary and after he made that change without reserving the right to make future changes, his power under the policy was exhausted and all future changes were without effect, Sampson v. United States, D.C.Mass.1932, 1 F. Supp. 95; Brown v. Powell, Sup.Ct.1923, 130 Miss. 496, 94 So. 457.

In conflict with these decisions, however, is a more recent decision of the Court of Appeals, Seventh Circuit, Hintz v. Hintz, 1935, 78 F.2d 432, 433, wherein cognizance was taken of both of the last mentioned cases. In that case the insured took out a life insurance policy naming his brother as beneficiary. Upon marrying, he changed his beneficiary from his brother to his wife without specifically reserving the power to make future changes. Subsequently he attempted to change the beneficiary from his wife to his sister. The policy provided, with respect to the right to change,

"Central Life Assurance Society \* \* \* Agrees to pay \* \* \* to Alvin L. Hintz \* \* \* if the Insured be then alive, or upon receipt of due proof of the prior death of the Insured to William Howard Hintz

beneficiary with right of revocation of Beneficiary reserved to the Insured."

Paragraph 10 of the policy read:

"When the right of revocation has been reserved, or in case of the death of any Beneficiary, under either a revocable or irrevocable designation, the Insured, subject to any existing assignment of the Policy, (a) may designate (1) one or more new Beneficiaries with or without reserving the right of revocation; * * *."

Rejecting the contention of the insured's wife that the language of the policy authorized but one change unless the right to change in the future was again reserved, the court stated: 

"We agree with the position that the reserved right of revocation appearing in the first clause was neither expressly nor impliedly limited by paragraph 10. To hold otherwise would be to place a construction on the contract which would be contrary to the implication arising from the express reservation. That the insured desired the right to change his beneficiaries is clear. On such assumption, we can conceive of no reason which would justify a court in assuming that insured intended such reservation to apply only to one change in beneficiaries. Where the right to change beneficiaries is reserved, it would seem more rational to require that any limitation on the number of possible changes to be effective should be expressly set forth." 78 F.2d at page 434.

■ This interpretation of the language in the policy under consideration in this case would appear to effectuate the purposes and intent of both the insured and the insurer, who, it is clear, believed that there was a right to change beneficiaries at will whether such right was expressly reserved in each change or not. The phrase causing ambiguity, "with or without reserving the right of change", would apply, perhaps, when the insured had named irrevocably a beneficiary who subsequently died. When the insured named a new beneficiary he would again have the option of doing so "with or without reserving the right of change." By applying this phrase in such a situation, it is given a reasonable interpretation which neither renders it useless nor so construes it as to cause it to conflict with a clear provision of the policy. As this result is consistent with New Jersey law and as there is no public policy served by protecting the interests of whomever an insured names in his first change of beneficiary, there would seem to be no good reason whatsoever for not giving effect to the meaning of the policy and the intent of the contracting parties. Consequently I hold that the right of John S. Conroy to change beneficiaries was not exhausted by the change from his estate to his wife and three children on April 29, 1929, without specifically reserving the right to change beneficiaries.

### III

There was a succession of changes of beneficiary until that of March 2, 1938, each of which was made pursuant to the insured's right to change beneficiaries reserved in the policy and each of which was effective until revoked by a subsequent change. Then on March 2, 1938, there occurred a change which designated as beneficiaries the estate of the insured to the extent of $1,500, fourteen friends who were to receive certain amounts, John S. Conroy, 3rd, to the extent of $3,000, with the balance going to Robert Conroy and Lois Anne Conroy to be paid in a manner specified. On March 29, 1938, the insured assigned the policy of insurance to the First National Bank & Trust Company of Beverly, New Jersey and Howard Eastwood. On April, 17, 1938, the insured requested a change in beneficiary to them as trustees. A trust agreement signed April 18, 1938, stated that these assignees were to be trustees of the funds coming into their hands and indicated the manner in which the insured desired these funds to be administered. The second count advanced by the cross-claimants asserts their rights on the basis of this trust in the event that they are not successful in establishing their rights under the first count.

 The initial question concerns the effect of the March 29, 1938 assignment on the rights of the beneficiaries named on March 2d. The majority rule would appear to be that where a life insurance policy reserves to the insured the right to change the beneficiary and permits assignment of the policy he may assign it without the consent of the beneficiary and without complying with the provisions of the policy prescribing the manner of changing the beneficiary, and that upon insured's death the assignee is entitled to the proceeds of the policy to the extent of his interest as against the beneficiary, see Life Insurance-Assignments, 1941, 135 A.L.R. 1040; 2 Appleman, Insurance Law and Practice § 1196 (1941). Were this the rule in New Jersey it could be argued that the trustees here would take the proceeds of this policy by virtue of the March 29th assignment and the trust agreement. But it has been long held in this state that there are two sets of interests in a life insurance policy such as the one in question in this case, that of the beneficiary to the proceeds of the policy if he survives the insured and that of the insured's representatives to the proceeds if the insured outlives the beneficiary. Each set of interests may be assigned, but the assignment of either one leaves the other unimpaired, Sullivan v. Maroney, infra. The interest of a beneficiary can be defeated only in the manner specified in the policy, Prudential Insurance Co. v. Swanson, supra; Prudential Insurance Co. v. Mantz, Chancery 1941,

128 N.J.Eq. 480, 17 A.2d 279, affirmed, E. & A. 1941, 130 N.J.Eq. 385, 22 A.2d 241; Anderson v. Broad St. National Bank, Chancery 1918, 90 N.J.Eq. 78, 105 A. 599, affirmed, E. & A. 1920, 91 N.J.Eq. 331, 109 A. 205.[2]

However, there are modifications of this rule. Unless the assignment of March 29th falls within them it would have no effect on the rights of previously named beneficiaries and would serve only to transfer the contingent interest of the insured's estate to Howard Eastwood and the bank.

 The first modification of the rule relates to an assignment of his policy by the insured to the insurer as security for a loan on the policy. New Jersey has recognized the priority of such an assignment over the interests of a beneficiary, reasoning that a policy loan is a privilege reserved to the insured by the contract of insurance and a possibility of defeasance to which the beneficiary's interest had always been subject, David v. Metropolitan Life Insurance Co., supra. This rule enabled the Continental Assurance Company in this case to enforce Conroy's assignment to it to the extent of his outstanding debt. The rule, of course, does not effect the assignment of March 29th.

 The second modification of the New Jersey rule is that if an insured in attempting to change a beneficiary has done all he could to comply with the policy requirements and has substantially complied, a change will be effected, see Goldberg v. Hudson County National Bank,

---

2. "Sullivan v. Maroney, 1909, 76 N.J.Eq. 104, 73 A. 842, 844, affirmed, 1910, 77 N.J.Eq. 565, 78 A. 150 is the fountainhead of a long line of cases which hold that under New Jersey law a beneficiary takes a vested interest in a life insurance policy notwithstanding the reservation of the right in the insured to change the beneficiary, and that where a policy stipulates the way in which the beneficiary may be changed, that procedure must be followed in order that the interest of the original beneficiary may be divested. The Sullivan case spells out the doctrine that 'There (are) * * * two sets of interests in (a) policy—the beneficiaries (sic) * * * and the representatives (sic) of the in-

sured * * *. Each of these interests (may be) subject to assignment. Neither one (can) * * * assign anything excepting that which (will) come to that one, and the assignment of neither (can) possibly impinge upon the rights of the other'.

"However, it is equally important and as clearly recognized by the courts of New Jersey that primary definition and delimitation of the interest of the beneficiary must be found in and measured by the terms of the contract of insurance out of which solely his rights arise. * * *" Phoenix Mut. Life Ins. Co. v. Connelly, 3 Cir., 1951, 188 F.2d 462, 464.

E. & A. 1938, 123 N.J.Eq. 269, 273, 197 A. 20. As there was no attempt as of March 29th to make Howard Eastwood and the bank beneficiaries, this modification does not convert the assignment into a change of beneficiary.

█ The third modification of the rule prevails when the policy of insurance provides by its terms that an assignment shall operate to transfer the interest of the beneficiary as well as that of the insured. In Phoenix Mut. Life Ins. Co. v. Connelly, supra, the policy provided,

> "If the right to change the beneficiary has been reserved to the insured, an assignment, release or surrender of this policy or any interest therein by the insured, if of legal age, shall operate to the extent thereof to assign, release or surrender the interest of any and all beneficiaries hereunder."

The court held that this clause subjected the beneficiary interest to an additional power of defeasance. As there is no such provision in the policy in this case, this modification of the New Jersey rule also does not govern the March 29th assignment.

█ The fourth modification of the New Jersey rule relates to the situation which arises when the estate of the insured is the beneficiary of the policy. If there is an assignment of the policy under such circumstances, it is effective to vest in the assignee both the insured's and the beneficiary's interests, see Phoenix Mut. Life Ins. Co. v. Connelly, supra, footnote 9, 188 F.2d at pages 465, 466; but see Freedman, Insurance Law, 6 Rutgers Law Review 323, 324 (1951).

In the case of Metropolitan Life Insuranc Co. v. Poliakoff, Chancery 1938, 123 N.J.Eq. 524, 198 A. 852, the insured's estate was beneficiary of his life insurance policy, which provided for five annual payments in the event of disability. In order to recover these disability payments, the insured contracted with the defendant as his attorney, promising to compensate him with 50% of any recovery made for him. Subsequently the insured changed the beneficiary to John Matwijizyn. The insured died after receiving three of the disability payments. His attorney claimed one half of the remaining payments under his contract. The beneficiary claimed all of the remaining payments, asserting that he had a vested interest which could not be defeated by the contract with the attorney. Though the court held that the policy was never actually assigned to the attorney, it analogized the transaction as an assignment of the policy and enforced his attorney's lien on one half of the proceeds as against the named beneficiary, stating:

> "As already noted, Matwijizyn's policy was payable to his 'estate' when Poliakoff acquired a lien on the proceeds. No one then had an interest in the policy save insured; the entire proceeds were under his control and were subjected by him to Poliakoff's lien. Once the lien was given, it could not be defeated by the action of insured in naming a beneficiary. John Matwijizyn can claim only as insured's nominee; his title is subordinate to the encumbrance which insured had created." 123 N.J.Eq. at page 531, 198 A. at page 855.

█ Since in his March 2, 1938 change of beneficiary John Conroy named his estate to the extent of $1,500, under the fourth modification of the New Jersey rule concerning the effect of an assignment of a life insurance policy on the interest of the beneficiary, the assignees Howard Eastwood and the bank took a total interest, i. e., the beneficiaries' and the insured's interests, in $1,500 of the proceeds of the policy. They held only the insured's and not the beneficiaries' interests in the rest of the policy at that time.

IV

On April 7, 1938, the insured, John S. Conroy, revoked all his former designations of beneficiaries and named in place thereof "First National Bank and Trust Co., of Beverly, New Jersey and Howard Eastwood, co-trustees under trust agreement dated March 29th—1938." The insured specifically reserved the right to make further changes of beneficiary.

■ It is well established in New Jersey that where an insured has reserved the right to change the beneficiary he may create a trust in the proceeds of the policy that will accrue at his death by naming a trustee, Fidelity Union Trust Co. v. Phillips, supra (by implication); Bose v. Meury, Chancery 1932, 112 N.J.Eq. 62, 163 A. 276; Prudential Ins. Co. v. Bloomfield Trust Co., Chancery 1929, 104 N.J. Eq. 372, 145 A. 735; compare James v. Falk, E. & A. 1892, 50 N.J.Eq. 468, 26 A. 138. Thus if John Conroy's estate planning had culminated in the April 7th change of beneficiary and April 18th trust agreement, there would be a valid insurance trust.

Apparently, however, stability was not the insured's goal, for on July 24, 1939 he initiated the first of another series of changes of beneficiary by revoking all former designations and substituting therefor his wife, Leona Force Conroy. Serious questions arise as to the effect of this change or attempted change.

■ It is established that if an insured creates a trust by exercising his power to change the beneficiary and names a trustee as beneficiary he is not barred from destroying the trustee's interest by naming another beneficiary. Thus in Fidelity Union Trust Co. v. Phillips, 1940, 5 N.J. Super. 529, 68 A.2d 574, affirmed, 1950, 4 N.J. 28, 71 A.2d 352, the court recognized as valid a transaction whereby the insured, who had named a trustee changed the beneficiary by naming his estate. Similarly, the case of Goldberg v. Hudson County National Bank, supra, concerns the revocation of a trust in part by changing the beneficiary from the trustee to another and in part by the court declaring a resulting trust in three policies which still named the trustee as beneficiary. Professor Scott has described the interest of the beneficiary-trustee as follows:

"The beneficiary of the policy, even though the insured reserved power to change the beneficiary, immediately acquires a chose in action, a claim against the insurance company, although it is not enforceable by him until the death of the insured and even though the insured by changing the beneficiary can divest his interest under the policy. He has, however, until his interest is divested, an interest which he can hold in trust." Scott on Trusts § 84.1 (1939).

## V

In the case at hand, however, not only were the trustees named as beneficiaries, they were at the same time, assignees of the policy. The moving cross-claimants advance in the second grounds for their motion for summary judgment the contention that though the assignment did not effect the interest of previously named beneficiaries, it did have the effect of preventing any interest from vesting in beneficiaries named after the assignment. I do not believe that this position is supported either by the terms of the policy or by the laws of New Jersey.

The policy provides as follows:

"Privileges

"Cash Loans—At any time after the premium for three full years has been paid on this policy and prior to default in the payment of any premium, the Company, upon proper assignment being made, will loan on the sole security of this policy any sum desired which, with interest, does not exceed the cash surrender value at the end of the then current policy year as stated in the 'Table of Policy Values.' The Company will deduct from such loan any indebtedness to the Company hereon and any unpaid balance of premium for the then current policy year. Interest shall be at the rate of five and one-half per cent per annum payable in advance to the end of the current policy year and thereafter annually in advance. The loan may be deferred for not exceeding sixty days after application therefor is made. Failure to repay such loan or to pay interest thereon shall not avoid this policy unless the total indebtedness to the Company hereon shall equal or exceed the total loan value at the time of such failure, nor until thirty-one days after

notice shall have been mailed to the Insured and to the assignee, if any, at their respective addresses last known to the Company.

\* \* \* \* \* \*

"Change of Beneficiary—When the right to change the beneficiary has been reserved, or in the event of the death of any beneficiary, the Insured may designate a new beneficiary, with or without reserving the right to change, by filing written notice thereof at the Home Office of the Company, accompanied by this policy for suitable endorsement. The rights of such new beneficiary shall be subject to any existing assignment of this policy made as herein provided.

\* \* \* \* \* \*

"Policy Provisions

"No assignment of this policy shall be binding upon the Company unless a duplicate thereof be filed with the Company at its Home Office and the consent of the Company thereto be given in writing by its President or Secretary. The Company assumes no responsibility as to the validity of any assignment."

It would appear that the statement in the section entitled "Change of Beneficiary" to the effect that "The rights of such new beneficiary shall be subject to any existing assignment of this policy made as herein provided" is intended to make clear that a subsequently named beneficiary's interest is (as was the interest of previously named beneficiaries), subject to assignments made to secure policy loans from the insurer. This interpretation is supported by the fact that the change of beneficiary provision is in the same section of the policy (entitled "Privileges") as the provision concerning assignment to secure cash loans from the insurer. The statements concerning assignments in general are in another part of the policy entitled "Policy Provisions".

In New Jersey the problem of assignment of a policy of life insurance as affecting a subsequent attempt to change the beneficiary is not the same as it is in the majority of states which hold that an assignment of the policy by the insured serves to transfer the beneficiary's interest as well as the insured's, see Change of Beneficiaries—Assignment, 1940, 125 A.L.R. 1097. In New Jersey where an assignment leaves unimpaired the interests of the beneficiary, the insured has been permitted to transfer the beneficiary interest after he has executed an assignment. In Phoenix Mut. Life Ins. Co. v. Connelly, D.C.N.J.1950, 92 F.Supp. 994, the court upheld the right of a beneficiary named after an assignment as against the assignee. This decision was reversed on appeal, 3 Cir., 1951, 188 F.2d 462, only because the policy itself contained a provision that an assignment operated to transfer the beneficiary's interest. Cf. Bose v. Meury, supra.

Thus the New Jersey law does not appear to support the contention of the moving cross-claimants that though the assignment of March 29th is ineffective to transfer the interests of an existing beneficiary, it is effective against a subsequently named beneficiary.

VI

It is apparent that the bank and Howard Eastwood acquired both the beneficiary's and the insured's interests in the entire policy as a result of the March 29, 1938 assignment and the April 7th change of beneficiary. They did not hold as donees [3] or assignees of the policy, however, but as trustees under the directions of the trust agreement of April 18th. The law of trusts, therefore, will determine whether or not the insured created a revocable or irrevocable trust.

The terms of the trust must be spelled out from the assignment, the change of beneficiary and the trust agreement construed together, Ownes v. Ownes, Chan-

---

3. For the requirements of a valid gift of a life insurance policy under New Jersey law see Guardian Life Ins. Co. v. Mareczko, E. & A. 1933, 114 N.J.Eq. 369, 373, 168 A. 642; Prudential Ins. Co. v. Deyerberg, Chancery 1927, 101 N.J.Eq. 90, 92, 137 A. 785.

cery 1872, 23 N.J.Eq. 60; Restatement, Trusts § 4, Comment a (1935). The trust agreement itself reserved no power of revocation in the settlor (the insured), though he did specifically reserve the right to alter the amounts payable to creditors under the agreement, foreseeing that he might repay some of his debts in his lifetime. The introductory paragraph of this document indicated, however, that there was uncertainty as to whether the trust would ever materialize, for it read in part, "* * * the intent and purpose * * * being to create a Trust Fund out of and from the proceeds of said life insurance policies as, if and when the same mature and/or paid * * *."

The April 7th change of beneficiary contained the statement: "The change of Beneficiary hereby made is with the right of the Insured to make further change of Beneficiary. This change of Beneficiary is subject to all the conditions and provisions of said policy not inconsistent herewith." Such a reservation of the right to change the beneficiary is a clear expression of the settlor's intent that the trust be revocable, and I think in that situation the intent should be given effect. The means of revocation was to be by changing the beneficiary from the trustee to another. The beneficiaries under the trust took an interest subject to that contingency. The assignment of March 29th was a part of the same trust transaction, and to the extent that it conferred beneficiary interests on the trustee, it conferred interests subject to revocation by a change of beneficiary. Confirmatory of the insured's motion that he retained the right to destroy this trust were the numerous subsequent changes of beneficiaries.

Having held against the cross-claimants on both grounds of their motion for summary judgment, this case must go to trial. Changes of beneficiary subsequent to that of April 7, 1938, have been challenged, and at least one creditor asserts that a change of beneficiary was made in her favor for a valuable consideration and could not be changed thereafter to defeat her interest. Thus issues of fact arise which cannot be decided upon motion.

An order should be submitted denying cross-claimants' motion for summary judgment in accordance with this opinion.